## SUCCESSION OF JOHN GILMORE, ARABELLA BAILY v. B. BAILY, HER HUSBAND, SUSAN HUBBS, Intervenor.

A judgment signed before a motion for a new trial is overruled, cannot be considered as having its effect until the motion is disposed of.

When the wife's paraphernal property was sold and negotiable notes taken for the price, payable to the husband, on which the husband sued the makers, and obtained judgment against them in his own name for the amount of the notes, it was held that the legal ownership of the judgment was in the husband—that the original notes were merged in and novated by the judgment, and that the judgment might be compensated by any debts equally liquidated due by the husband to the judgment debtor.

The knowledge on the part of the judgment debtor, that the notes on which the judgment was obtained was the property of the wife, would not prevent the compensation from taking place at any time while the legal ownership of the judgment remained in the husband.

APPEAL from the District Court of East Baton Rouge, *Robertson*, J. *Joseph Poor*, for appellants. *Felix R. Brunot*, for appellees.

MERRICK, C. J. A motion to dismiss the appeal has been filed in this case.

The judgment was pronounced in June, 1855. Before it became final, the appellants filed a motion for a new trial, which was not disposed of at that time, but submitted to the court without argument at the February term, 1856, and the same day it was overruled.

The appellants then applied for a devolutive appeal, which was allowed them, returnable to the present term of the Supreme Court.

The judgment appealed from, purports to have been signed on the 15th day of June, 1855, and the appeal bond was not filed until January, 1857, more than one year from the supposed signature to the judgment, and within the year from the overruling of the motion for a new trial.

It was the duty of the District Judge to have considered the motion for a new trial at the same term at which the judgment was rendered, and either to have overruled or granted the same. But it was irregular to sign the judgment until the motion for a new trial was determined.

We think the judgment cannot be considered as having its effect, and must be considered as suspended until the motion for a new trial was overruled. The neglect of the judge to perform his duties ought not to prejudice the parties who had a right to be heard on the motion. C. P. 557, 558, 563, 913.

The motion therefore to dismiss the appeal is overruled.

The merits of the case present but a single question which arises out of the following state of facts, viz:

John and Mary Gilmore died leaving five children, minors, and an estate consisting of a plantation and slaves, &c. Bernard Baily was appointed in 1841, tutor to the minors Arabella Gilmore, John A. Gilmore, Emeline Gilmore, Ann Gilmore and Susan Gilmore. He appears to have married his ward Arabella. She, with the assistance of her husband, in 1849, sold her interest in the succession of her parents, to John A. and Emeline Gilmore, her brother and sister, the notes given as the price being made payable to the order of her husband. She and her husband appear shortly afterwards to have moved to Illinois, where they now reside. Emeline Gilmore married H. C. Finley. Bernard Baily failing in collecting the notes at maturity, instituted a suit on them in his own name, and recovered judgment in April, 1853, against Mrs. Finley and John A. Gilmore, in solido, wherein the mortgage upon the property sold was recognized.

In May following, Susan Gilmore, wife of Charles Hubbs, filed her petition against Bernard Baily, to compel him to render his account as tutor.

He filed his account. Mrs. Hubbs, Mrs. Baily and John A. Gilmore, filed opposition to the same. Mrs. Hubbs considering the account to show a balance in her favor as stated, to the amount of $1,305 05, besides filing her opposition claiming a large amount, sued out a writ of attachment, which was levied the second day of January, 1854, by attaching in the hands of John D. Baker, James M. Brunot, attorneys for Bernard Baily, John A. Gilmore and Andrew C. Finley, all moneys, rights, credits or property of any kind, which they had at that time or thereafter might have, belonging to Bernard Baily, tutor, or an amount sufficient to pay said Susan Gilmore, wife of Charles Hubbs, plaintiff, in the sum of $1,305 05, and costs.

The curator ad hoc, appointed to represent Baily, answered the suit of attachment, alleging that the property attached was not the property of Baily, but belonged to his wife for whom he was merely acting as agent.

Mrs. Arabella Baily intervened in the attachment suit, alleging that her husband had no property in Louisiana, and averring that Mrs. Susan Hubbs and her husband had, notwithstanding, proceeded to attach a judgment obtained in the name of her husband, Bernard Baily, against John A. Gilmore

SUCCESSION OF
GILMORE.

and *Emeline Gilmore* and husband, *Andrew Finley*, standing in the name of her said husband. She further alleged, that her husband was in embarrassed circumstances, and that she had already instituted a suit against him for a separation of property. She prayed for an injunction to restrain her husband from receiving the amount due on the judgment. This intervention was filed 18th April, 1854. Her suit for a separation of property was commenced April 10, 1854, by the appointment of a curator *ad hoc*, to represent her husband, she representing her and her husband's residence to be Peoria, in the State of Illinois. She alleged that the said judgment obtained in the name of her husband against *Mrs. Finley* and *John A. Gilmore*, to be her separate property;— alleged that she was in danger of losing the same on account of an attachment levied on the same by her sister, *Susan Hubbs*, and on account of the pretensions of other persons having claims against her husband, and averred that *Andrew C. Finley* had enjoined the execution of said judgment as the property of her said husband. She prays that *Hubbs* and wife, and *Andrew C. Finley*, be cited as parties, and that the judgment against *Mrs. Finley* and *John A. Gilmore*, be decreed to be her property, &c. *John A. Gilmore* and *Emeline Gilmore* intervened, and alleged that they had claims against the said *Bernard Baily* arising from his account as tutor, but that as they have filed an opposition to the same, they are unable to state the exact amount due them, but it is more than sufficient to compensate the judgment obtained by *Bernard Baily* against them. On the opposition to the tutor's account, judgment was rendered in favor of *Mrs. Finley*, and *John A. Gilmore*, for $2,047 27, each.

The Judge of the District Court, in the suit of *Mrs. Baily* against her husband, considering the judgment in the name of *Bernard Baily* as her property, dissolved the attachment, rejected the claims in compensation, and decreed *Mrs. Baily* to be the owner of the judgment in suit No. 1103.

*John A. Gilmore* and *Mrs. Finley* alone perfected their appeal by giving bond. *Mrs. Hubbs* is not before us. The question presented by the appellants is, did the judge err in holding that the judgment was the absolute property of the wife, although obtained in the name of the husband? Where the wife permits her husband to administer her parephernal property, we see no reason why he should not be considered in relation to her commercial paper in his hands as any other agent. He may collect a debt due her and give a valid receipt in his own name. C. C. 2362; 12 Rob. 525. He may treat a note which he has taken on account of her paraphernal property as his own, transfer it or institute suit on it as owner. *Thibodeaux* v. *Thibodeaux*, 19 L. R. 440, *arguendo*.

Considering then, that *Bernard Baily* as the agent of his wife, in regard to the promissory note which he had taken in his own name, might recover judgment upon them, such judgment must have as great an effect against the principal as a judgment obtained by any other agent in his own name upon commercial paper belonging to another.

It has long been settled, that the effect to be given to such judgment upon the question of ownership, is that of the thing adjudged. In *Shaw* v. *Thompson*, 3 N. S. 392, the court said, "the suit appears to have been brought by the persons having the legal interest in the instrument sued on. Whether they were the owners or not, was a matter with which the defendant had nothing to do as the judgment here, formed *res judicata* against any other who might hereafter have claimed an interest in it."

In the case of *Mitaine* v. *Ferguson*, 18 L. R. 94, the court said that it was immaterial to the defendant, "whether the plaintiff recovers for his individual benefit, or as the agent of another; as the judgment will have the effect of *res judicata* against any one who might hereafter claim an interest in the note." See also 4 L. R. 220.

Whatever claim therefore, *Mrs. Baily* had against *John A. Gilmore* and *Mrs. Finley*, was merged in, and novated by the judgment in the name of her husband against them; the mortgage no less than the notes secured by it. *Dennistoun* v. *Payne*, 7 Ann. 334. The judgment was no longer the note, and much less the undivided fifth part of the succession of *John A. Gilmore*.

The consequences growing from the legal ownership of the judgment by *Baily*, were, that it was subject to be attached or seized at the suit of his creditors; he is capable of transferring or releasing it, as well as receiving payment, and the judgment might be compensated by any debts due by him to either of his judgment debtors, provided the same were equally liquidated.

But nothing prevents a judgment creditor from transferring his judgment to a third person, *a fortiori*, he may transfer it to his principal and when notified to the debtor, such transfer will be binding upon him. So also the principal may institute his action against the agent who has obtained a judgment in his own name, to compel him to transfer the judgment to him as the equitable owner of the same, and from the date of the notification of the suit, the judgment debtor would, we think, be precluded from acquiring any rights tending to defeat the claim of the principal, although he might lawfully liquidate any demand he might have against the judgment creditor, and even make payment (unless the judgment creditor should be enjoined from receiving payment) up to the time that the transfer of the judgment should be decreed, and compensation and payment would have their effect.

For up to the time that the transfer of the judgment should be decreed, the legal ownership must, under the authorities cited, be held to be in the judgment creditor, and, as a consequence, he may receive payment, and his judgment must be subject to compensation arising from any demand which becomes liquidated before such title has passed out of the judgment creditor by the decree.

The reason of the rule is this: a judgment debtor is not to be subjected to the hazard of a litigation between the judgment creditor and a third party, claiming the ownership of the judgment, which, after all, may prove unavailing; but he may at once relieve himself by making payment to him who holds the judgment rendered upon the commercial paper, and which has the effect of *res judicata* against all others. C. C. 2135.

So too, it would be unreasonable to prevent the judgment debtor from liquidating his demand (originating prior to notice,) against the judgment creditor, and obtaining the benefit of compensation taking effect by operation of law, so long as the legal title to the judgment remains in him. C. C. 2204, 2206, 2207.

But it is said that good faith is the basis of compensation, and that the plaintiff's brother and sister *knew* that the notes were given as the price of plaintiff's interest in the plantation, and therefore they cannot be permitted to liquidate a demand against *Bailey* and compensate his judgment by such liquidated demand, although acquired when his ownership of the judgment was unquestioned.

There would be much force in this argument if such knowledge could have been in any manner made available to them. On the contrary, it will appear by numerous decisions of this tribunal that a plea, that the note belonged to the plaintiff, would have been utterly unavailing against the action of the plaintiff's husband on the note. See cases cited under No. 10, Hennen's Dig. p. 183.

It is true, as urged by the appellees counsel, that the wife cannot become a surety for the payment of the debts of her husband, but if she aid her husband in converting her estate into negotiable paper, or cash, so that he can use it without any indorsement or contract on her part, it is her own fault and she must blame herself if he uses such paper or cash in the payment of his debts, and if other people act on the confidence which her own conduct inspires, third persons may presume that the wife intended to rely upon her tacit mortgage, or upon a re-investment of her paraphernal funds in some other way, or that the husband has already transferred to the wife other property in payment. C. C. 2121. As the debtor cannot prevent the husband, or any subsesequent holder, from recovering judgment upon the negotiable paper, payable to the order of the husband, so they ought not to be deprived of such legal consequences in their favor as arise from the judgment itself.

To assume that the institution of the suit by the wife to have the judgment standing in her husband's name adjudicated to her, was but the resumption of the administration of her paraphernal property, is a *petitio principii*, which we think we have sufficiently answered, by showing that the original note merged in and was novated by the judgment, and that it became, so far as it concerns the defendants, the absolute property of the judgment creditor, and that it is subject to attachment and seizure, and may be paid and compensated as his. In fine, that such judgment is as much the property of the husband as any other piece of property of which he holds the *indicia* of ownership. C. P. 548.

It does not appear to us, that the conclusions to which we have arrived in this case, violate natural equity. The plaintiff and her husband have established their domicil in another and distant State, and have doubtless withdrawn their means from Louisiana as far as possible. The husband seems to have carried with him, the money of the plaintiffs' brother and sister, obtained by him while exercising the sacred trust of guardian. The wife allowed him, while here, the unlimited control of her commercial paper, and suffered it to be declared his, by a court of justice. The decree which we shall pronounce, will merely declare that the judgment, to a certain extent, shall be compensated as his, and leave the wife the more convenient resort of the courts of her own domicil to enforce the residue of her claims against the husband.

Whether a wife domiciled with her husband in another State can institute an action for the recovery or separation of property in Louisiana by means of a curator *ad hoc* appointed to represent him, is a question in which these appellants have no interest, further than to be allowed their credits upon the judgment.

The judgment of the lower court on the contest upon the account, liquidating the amount due by *Bernard Baily* to *Mrs. Finley* and *John A. Gilmore* at $2,047 27 each—signed the 19th day of June—appears to have been acquiesced in by the parties thereto. The judgment obtained by *Bernard Baily* against them *in solido*, in suit No. 1103, for the sum of six thousand dollars and interest, as .

therein stated, is compensated by said two sums of $2,047 27, to the extent of four thousand and ninety-four dollars and fifty-four cents, as of June 19, 1856, and the said plaintiff is entitled to be considered the owner and transferee of said judgment in said suit No. 1103, of said Sixth District Court, in and for the Parish of East Baton Rouge, for the remainder due thereon.

It is therefore ordered, adjudged and decreed, by the court, that the judgment of the lower court be so amended as to decree that said judgment in said suit No. 1103, against said *Emeline Gilmore*, wife of *A. O. Finley*, and *John A. Gilmore*, in the Sixth District Court, in and for the Parish of East Baton Rouge, be entitled to a further credit of four thousand and ninety-four dollars and fifty-four cents, as of June 19, 1856, in compensation of the sum of $2,047 27, due each of said defendants by said judgment against *Bernard Baily*; and that said judgment in said suit No. 1103, so credited, be decreed to belong to said *Arabella Baily*, and that her right to recover· from her said husband said sum of $4,094 54, be reserved her, and that the judgment of the lower court so amended be affirmed, the plaintiffs and appellees paying the costs of the appeal.

Spofford, J., dissenting. It cannot be pretended, that when *Mrs. Baily* sold the paraphernal property to her co-heirs, the appellants, and the latter gave their notes for the price payable to the husband, that the notes became absolutely his property. He held them simply in his capacity as administrator of his wife's paraphernal estate, or as her mandatory. The appellants, the co-heirs, who bought her property and gave a mortgage in *her* favor to secure the notes payable to her husband, *knew* that the notes were hers. When the husband sued on them, they *knew* that it was in that capacity that he sued, for the husband and wife cannot contract with each other, at least she could not sell her paraphernal property to him, pending the marriage. The judgment was therefore still the wife's paraphernal property, standing in the name of her husband as her mandatory, and to the knowledge of the judgment debtors.

For the purposes of this case, it might be conceded that, so long as she chose to leave the control of her separate estate to him, the judgment debtors could discharge themselves by compensating against the judgment, their claims against him personally, but surely no longer. She could, at any moment, lawfully revoke his agency, and resume the control of this judgment, as part of her paraphernal estate. From the instant she gave notice to the judgment debtors that she had resumed the management of her separate property including the judgment, it seems to me too clear for argument, that the debtors could not be permitted to go forward and liquidate a claim they held against her husband individually, in order to plead it in compensation against the judgment which, in truth and to their knowledge, always belonged to the wife, and of which she had notified them that she had resumed the administration. It strikes me that the opposite doctrine would introduce discord into a system of law which, perhaps, goes further than.any other towards protecting the property of married women, and it would also, in my judgment, be inconsistent with the old and sacred principle that compensation has its basis in good faith.

Now it appears that in April, 1854, the plaintiff availed herself of the legal right to resume the administration of her paraphernal property, and notified the appellants in the most formal and emphatic manner by judicial proceedings contradictorily with them claiming the judgment, that she had done so.

SUCCESSION OF
GILMORE.

It is not pretended that the judgment was *then* in any part extinguished by compensation; indeed, it was legally impossible, for up to that time the appellants had no liquidated claim against her husband. After she had resumed control of this judgment, confessedly her property, to the knowledge of the judgment debtors, and after she had notified them of the resumption, what right had they to go forward and liquidate an unliquidated claim of theirs against her husband personally, in order to pay her off with it, and thus in effect make her a surety for his debts ?

I think, with the District Judge, that such a proceeding was inadmissible, and that as the judgment was in no part paid or compensated at the date when the wife notified the appellants that she had resumed control of it, it cannot now be compensated by her husband's debts to them, which were not liquidated till long after such notification.

I think the judgment should be affirmed.

VOORHIES, J., concurs in this opinion.