(66 South. 774)

No. 20009.

MERCER et ux. v. NATCHEZ, B. & S. RY. CO. et al.

(Oct. 19, 1914. Rehearing Denied Dec. 14, 1914.)

*(Syllabus by the Court.)*

1. NEW TRIAL ⬤⟝117—MOTION—RIGHT TO MAKE—RENDITION OF JUDGMENT.

The fact that a judgment is signed upon the day that it is rendered cuts off no rights of the party cast with respect to moving for a new trial.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 238–241; Dec. Dig. ⬤⟝117.]

2. JUDGMENT ⬤⟝282—BAR TO RENDITION — MOTION FOR NEW TRIAL.

A motion for new trial, filed within the legal delay, operates, until disposed of, as a bar to the signing of the judgment of which it complains.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 554–556; Dec. Dig. ⬤⟝282.]

3. NEW TRIAL ⬤⟝155, 157—PROCEEDINGS TO PROCURE—TIME FOR HEARING.

The fact that a motion for new trial, filed in due time, is not disposed of before the adjournment of the court, upon the expiration of the term at which the judgment complained of was rendered, does not devest the trial judge of jurisdiction thereafter to dispose of such motion, and, until he does so, the judgment, though signed, is to be regarded as having been prematurely signed, and remains open to revision; and as, in such case, it is open to revision for matters set up in the original motion, it is equally so as to matters set up in supplemental motions, though filed more than three days after the rendition of the judgment.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 314, 315, 317, 318; Dec. Dig. §§ ⬤⟝155, 157.]

Appeal from Thirteenth Judicial District Court, Parish of Grant; W. F. Blackman, Judge.

Action by Mose Eli Mercer and wife against the Natchez, Ball & Shreveport Railway Company and others. From judgment for defendants, plaintiffs appeal. Reversed and remanded.

Harry Gamble, of New Orleans, for appellants. Blackman, Overton & Dawkins, of Alexandria, for appellees.

Statement of the Case.

MONROE, C. J. Plaintiffs instituted a suit against the J. F. Ball Bro. Lumber Company, Limited, for damages, for the death of their minor son, through the alleged negligence of the defendant, and Oliver Watson and his wife, about the same time, instituted a suit against the same defendant and also against the Iron Mountain Lumber Company and the Natchez, Ball & Shreveport Railway Company, on behalf of

their minor son, for damages, for injuries received by him in the same accident. As the testimony that was required to be taken was, in the main, equally applicable in the one case as in the other, the two cases were tried together, and there was judgment for defendants in both. The Watsons alone appealed, and this court found that the Iron Mountain Lumber Company is merely a name under which the J. F. Ball Bro. Lumber Company, Limited, transacts part of its business, and gave judgment in favor of Carl Watson (the minor, who, by that time, had attained majority) and against the company last mentioned and the Natchez, Ball & Shreveport Railway Company, in solido, but eventually remanded the case, on the question of the quantum of damages. Plaintiffs herein, as we are informed through the brief of their counsel, were not able to give the bond required of them, and therefore took no appeal; but, before the year expired, brought this suit against the Natchez, Ball & Shreveport Railway Company, and, judgment of nonsuit having been rendered and signed herein, on June 5, 1912, they prosecuted this appeal therefrom. The dismissal of the case, as stated, was the result of a misunderstanding which arose as follows: ·The opposing counsel had agreed that the testimony taken on the former trial should go in, so far as offered by either side, plus any additional testimony that either might choose to offer. Counsel for plaintiffs, in April, caused the case to be set down for trial on June 5. Late in May, some additional testimony was taken, by consent, on behalf of defendant, and it was then understood that the case would be tried on the day fixed and that either side might then introduce additional testimony. Counsel for plaintiff was, about that time, appointed Assistant Attorney General, and entered upon the discharge of his duties, at New Orleans, about June 1st. He in the meanwhile had

concluded to offer no additional testimony in this case, and on June 3d, in view of the fact that he expected, on June 5th, to be engaged in the trial of a case for the state, he wrote, from New Orleans, to defendants' counsel, at Alexandria, to that effect, and requested that the case be submitted, on behalf of plaintiffs, upon the testimony taken upon the former trial. The district court was, however, holding its session at Colfax, and counsel's letter did not reach the addressee until after he had returned from that place to Alexandria, on June 6th, and, in the meanwhile, upon the nonappearance of plaintiff or his counsel, when the case was called, had caused it to be dismissed. In order, however, to facilitate its reopening, in the event that it should turn out that it had not been abandoned, he had, on the same day, filed a pro forma motion for new trial, on behalf of plaintiffs; and when, upon his return to Alexandria, he received the letter from plaintiffs' counsel, he replied, informing him of what had taken place and expressing his willingness to reopen the case if any good reason should be shown why plaintiffs' counsel was not present at the calling of the case. Counsel for plaintiff says, in his brief that, "Perhaps sufficient notice was not taken, at the time of the statement of counsel for defendant," and the result of an interchange of letters seems to have been an understanding that each of the parties would thereafter stand upon his legal rights. Plaintiff's counsel, on June 8th, himself, prepared and forwarded by mail a motion for new trial, which appears to have been filed on June 11th—several days after the expiration of the delay allowed for the filing of such motion—and another motion was filed by him, apparently, on June 18th. (We say "appears," and "apparently," with reference to what is disclosed by the excerpts from the minutes, and we take occasion to animadvert on the negligence of

clerks, either in failing to indorse their filing upon the documents themselves, or in failing to copy the indorsements in the transcript, where they should appear at the headings of the documents, respectively.) In the meanwhile, his former law partner had gone to Colfax, on June 13th (the court being still in session, and not adjourning for the term until June 27th) and had made an effort, though not by motion in court, to have the application, or applications, for new trial heard, but was unable to secure the presence of opposing counsel, and nothing further was done in the matter. Nor was anything further done at the next term of the court (in October), or until April 9, 1913, when the application was heard and submitted; after which, on May 7th, it was denied, upon the following grounds, assigned by the trial judge, in writing, to wit:

"Plaintiff * * * set his case for trial on the 5th day of June, 1912. Failing to appear, * * * the defendant called upon the plaintiff to prosecute the suit, and had the same dismissed as in case of nonsuit. It seems that defendant's counsel, John C. Blackman, Esq., filed an application for a new trial, for plaintiff, and notified him that, if he had any reason for not being present, he would grant the new trial. It seems that there was some misunderstanding between counsel * * * and no agreement was reached and the case was not disposed of at that term of the court; nor was it continued by consent, and it was not disposed of at subsequent terms of the court; and, after the decision of the Supreme Court in the case of Watson versus the same defendant, plaintiff urged the trial and defendant excepted to the right of the court to consider the motion for a new trial, as the time had long since lapsed.

"Article 558 of the Code of Practice says:

"The party who believes himself aggrieved by the judgment given against him, may, within three judicial days after such judgment has been rendered, pray for a new trial, which must be granted, if there be good grounds for the same; provided, that said new trial shall be prayed for and passed on before the adjournment of the court.

"This provision of the Code of Practice makes it mandatory that the new trial shall be passed upon before the adjournment of the court; and (though) in some cases, it has been allowed to go over until the following term of court, by consent of parties, or, by the inaction of the judge, when called upon to decide the motion, I think the 25th (35th) La. Ann. case (page 1104) sustains the contention of the defendant in motion, for the reason that the facts here are about the facts in that case. So far as the signing of the judgment, on the day that it was rendered, and before the three days allowed for an application for new trial, is concerned that is frequently done, here in the country, to accommodate counsel who wish to leave the session of the court, or who are nonresident attorneys, but it does not, and cannot, interfere with the motion for new trial; and, if the motion is sustained, and a new trial granted, the judgment is, of course, set aside; if the new trial is not granted, the judgment stands. I see nothing in the signing of the judgment, even though it be said to be premature, that interferes with any right that the plaintiff might have in the premises. For these reasons, I have arrived at the conclusion that the motion for a new trial should be overruled, as I have no authority, under the article 558 of the Code of Practice, to grant the same."

### Opinion.

[1-3] We are unable to concur in the view expressed by the learned trial judge that, because the application for new trial was not acted on before the expiration of the term at which the judgment was rendered, he was thereafter without authority to act upon and grant it; nor do we find that the decision to which he refers (which we take to be that rendered in State ex rel. Allen & Syme v. Judge, 35 La. Ann. 1105) sustains that proposition. Quite to the contrary. This court, in that case, said:

"The contention of the relators is that, as the motion (for new trial) was not determined at the term at which the judgment was rendered, the judgment, though prematurely signed, has become final, and the motion for new trial could not be tried thereafter. They invoke the act of 1839 and articles 546 and 558 of the Code of Practice, and infer that, where the motion for new trial is not determined at the same term at which the judgment was rendered, it lapses and the judgment becomes at once final. The relators could not successfully invoke this rule, even if the law stood their construction, because they themselves consented to a continuance of the motion for new trial to the next term and cannot be permitted to avail themselves of their consent to the injury of the mover in the rule for a new trial."

Proceeding, then, to show that the law invoked by the relators (apart from their consent) does not stand the construction placed on it by them, the court said:

"It is remarkable that the articles relied on do not prescribe any penalty, and that, owing to this omission, cannot be considered as being penal or mandatory laws, enacted for the preservation of public order or good morals. The court cannot supplement the law and enact penalties where the Legislature has not deemed proper to append any. The provisions invoked are merely directory to the judge and designed to regulate the administration of his judicial powers or faculties and the discipline of his court. * * * The cast defendant has done everything which the law required of him. He has filed his motion in due time, has set forth plausible grounds, which were subsequently considered sufficient to justify a new trial, and is in no way chargeable with laches. * * * He is entitled to the action of the court on his motion for new trial as much as the appellant is to an order of appeal on his demand for one. Neither the one nor the other can be made to suffer where, by no fault of theirs, the new trial was not allowed at the same term, or the appeal granted before the legal delay for appealing had elapsed."

And the court refers to Succession of Gilmore, 12 La. Ann. 562, in which it was held (quoting from syllabus) that:

"A judgment signed before a motion for a new trial is overruled cannot be considered as having its effect until the motion is disposed of."

A doctrine which is sustained by the rulings in State ex rel. Wentz v. Judge, 35 La. Ann. 873; Durbridge v. State, 117 La. 841, 42 South. 337, and other cases.

It has frequently been held that, so long as a judgment remains unsigned, it remains open to revision, and hence that a motion for new trial may, in such case, be filed after the expiration of the delay by which it would otherwise be excluded. Smith v. Harrathy, 5 Mart. (N. S.) 321; Smelser, Syndic, v. Williams & others, 4 Rob. 152; Citizens' Bank v. Bellocq, Noblom & Co., 19 La. Ann. 376; Thiele & Seiler v. Crutcher & Co., 20 La. Ann. 500; Johnson v. Gennisson, Id. 511. It has also been held that, though a judgment, prematurely signed, does not preclude the exercise, by the party cast, of the right to move, within the delay allowed by law, for a new trial, yet that, in the absence of such motion, the signing will become effective upon the expiration of such delay. Marigny v. Stanley et al., 2 La. 323; Hubbell v. Clannon, 13 La. 496. It follows therefore that the motion filed on behalf of plaintiff, by defendant counsel, operated as a bar to the signing of the judgment of nonsuit which the counsel had obtained, and that, notwithstanding the adjournment of the court without action on the motion, and notwithstanding that the judgment was actually signed, the signing was premature, because of the pendency of the motion, which kept it open to revision until it (the motion) was disposed of. It follows, also, that if, up to May 7th, when the motion was overruled, an original motion for new trial might have been filed, it was competent for plaintiff, up to that time, to file his supplemental motions, and hence that he was entitled to consideration with reference to the matters alleged in those motions as though they had been alleged in the original motion. We understand, from the reasons assigned by the trial judge, that he did not consider himself at liberty to inquire into those matters, but held, in effect, that he was without jurisdiction, and, as we are of opinion that he erred in so considering, it appears to us that the proper course to pursue is to reverse the judgment appealed from and remand the case, in order that it may obtain—that which it has not yet had—a trial upon its merits.

It is therefore ordered that the judgment appealed from be set aside, and that this case be remanded to be proceeded with according to law and to the views expressed in the foregoing opinion.