(84 South. 55)

No. 22935.

RYLAND v. HARVE M. WHEELER LUMBER CO.

(April 29, 1919. On the Merits, Nov. 3, 1919. On Rehearing, March 1, 1920.)

*(Syllabus by the Court.)*

On Motion to Dismiss Appeal.

1. APPEAL AND ERROR ⬳396—APPEAL TAKEN IN NOVEMBER FROM JUDGMENT RENDERED IN OCTOBER HELD TAKEN DURING THE TERM, SO THAT CITATION NOT NECESSARY.

Where it appears that a district court has set apart the months of August and September as the period of its annual vacation, it necessarily follows that the months from October to July, inclusive, constitute the ten months' continuous session or term required by article 117 of the Constitution, and it also follows that an appeal taken in November from a judgment rendered in October is taken during the term at which the judgment was rendered, even though at a session subsequent to that at which the rendition took place, and that it is properly taken by motion and without citation of the appellee.

2. APPEAL AND ERROR ⬳347(1)—"RENDERED," AS USED IN CODE REQUIRING APPEAL TO BE TAKEN DURING TERM, MEANS RENDERED AND SIGNED.

The word "rendered," as used in Code Prac. art. 573, is to be construed with Code Prac. art. 546, and Act No. 40 of 1904, and, as thus construed, means rendered and signed; and, it is from the signing (if not premature) and not from the rendition, of a judgment, that it becomes executory and appealable, and that the delay within which the appeal may be taken begins to run.

On the Merits.

3. MASTER AND SERVANT ⬳367 — LOGGER HELD TO BE "INDEPENDENT CONTRACTOR" NOT WITHIN EMPLOYERS' LIABILITY ACT.

A person who engages in hauling logs, under a contract at so much per 1,000 feet, and who supplies his own teams, employs and discharges his own labor, and is his own master in the matter of handling his outfit and of the method to be adopted in the execution of the contract, is an independent contractor, and his claim for damages for personal injuries sustained while so engaged is not within the purview of the Employers' Liability Act, No. 20 of 1914.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Independent Contractor.]

4. MASTER AND SERVANT ⬳230(1)—IF INDEPENDENT CONTRACTOR CHOOSES TO WORK IN UNSAFE PLACE, HE DOES SO AT HIS OWN RISK.

The rule which entitles an employé to rely upon the prevision and superior knowledge of his employer in the matter of providing a safe place wherein the employé is to do his work is in general inapplicable to the relations between an independent contractor and the person with whom he contracts. Ordinarily the independent contractor is expected to determine that matter for himself; and, if he chooses to work in an unsafe place, when a safe place would be provided for the asking, he does so at his own risk.

On Rehearing.

*(Additional Syllabus by Editorial Staff.)*

5. APPEAL AND ERROR ⬳835(3)—APPELLANT'S ACQUIESCENCE IN JUDGMENT BELOW IS A QUESTION FOR COURT BELOW.

The Supreme Court has no original jurisdiction to consider and pass upon the letters annexed to the petition for rehearing and filed

as evidence of the alleged acquiescence of appellant in the judgment of the district court when judgment was rendered on appeal by the Supreme Court, and the question of acquiescence must be determined by the district court, for which purpose the case must be remanded to it.

Appeal from Eighth Judicial District Court, Parish of Catahoula; S. R. Holstein, Judge.

Action by Joseph T. Ryland against the Harve M. Wheeler Lumber Company for personal injuries, under the law of torts, and in the alternative for compensation under the Employers' Liability Act. Judgment for plaintiff under the Employers' Liability Act, and defendant appeals. Motion to dismiss the appeal denied, and judgment reversed, and plaintiff's demand rejected, and, on rehearing, case remanded for determination of question whether defendant had agreed to abide by the judgment of the district court when judgment was rendered by the Supreme Court.

R. M. Taliaferro, of Harrisburg, for appellant.

Blackman, Overton & Dawkins, of Alexandria, for appellee.

### On Motion to Dismiss Appeal.

MONROE, C. J. Defendant having appealed from a judgment awarding plaintiff damages for personal injuries alleged to have been sustained while in the discharge of functions pertaining to his employment, plaintiff moves that the appeal be dismissed, on the ground that it was obtained by motion at a term of court subsequent to that at which it was rendered, and that it (defendant) was not cited, or prayed to be cited, to answer thereto.

The transcript contains the following "statement of facts" by the trial judge, to wit:

"This cause was tried before the undersigned on June 8, 1913, and taken under advisement for decision on briefs to be filed by both sides. August and September being the months of vacation of the Eighth district court, the case was decided and judgment rendered and signed in open court the 20th day of October, 1917. This date was not of regular term of court for Catahoula parish. The court opened for the express purposes of rendering and signing judgment in this case, and immediately after doing so adjourned sine die. The motion for new trial in this case was filed on Monday, the first legal day following the date of judgment. The motion for new trial was taken up, tried, and overruled on the [first] day the court was opened and in session after signing the judgment."

The minutes of the court show the rendition and signing of the judgment, the granting of an appeal, and (with the statement of the judge) the immediate adjournment of the court sine die on October 20, 1917, the hearing and overruling on November 12th of a motion for new trial (which had been filed on October 22d), and the filing of a motion for, and granting of, an appeal on the same day, followed on November 21st by the filing of a bond for a suspensive appeal.

### Opinion.

[1, 2] The Constitution (article 117) requires the district courts to hold continuous "sessions" during ten months of the year, and the session thus required to be held is the equivalent of the "term" referred to in C. P. art. 573, in declaring that—

"Whoever intends to appeal, may do so either by petition, or by motion in open court at the same term at which the judgment was rendered," etc. Act No. 163 of 1898; State ex rel. Murray v. Judge, 50 La. Ann. 985, 24 South. 132; McCutchen v. Hudson, 132 La. 178, 61 South. 157.

As it appears from the statement of the trial judge that August and September are the months during which his court is in vacation, it follows that the months from October to July, inclusive, are the ten months constituting his continuous term or session, and that the appeal herein taken on November 12th from a judgment rendered on Oc-

tober 20th was taken at the same term at which the judgment was rendered. If it be argued that it was not taken within the ten days required to 'stay execution, the answer is: First, that that question is not presented by the motion to dismiss; and, second, that the appeal was taken within that delay, since the judgment did not become executory or appealable until signed, was not ready for signature until after the expiration of three days from its rendition, until which the signing was premature and ineffectual, and, by reason of the filing of a motion for new trial within that period, did not become executory, or appealable, until the motion had been denied. Act No. 40 of 1904; Mercer v. Natchez, B. & S. Ry. Co., 136 La. 187, 66 South. 774; State ex rel. Mack Wellman v. Bell, Judge, 77 South. 493, 142 La. 662, No. 22872 of the docket of this court. It may be stated in this connection that the word "rendered," as used in C. P. arts. 558, 565, 570, 571, 573 (and perhaps other articles), is to be construed with article 546 of the Code of Practice, as also with Act No. 40 of 1904, above cited, and, as thus construed, means rendered and signed, and that it is from the signing (if not premature), and not from the rendition, of a judgment that it becomes executory and appealable, and that the delay within which the appeal may be taken begins to run. 1 Hen. Dig. p. 730, IV.

The motion to dismiss is therefore overruled.

### On the Merits—Statement of the Case.

MONROE, C. J. Plaintiff alleges that defendant is indebted to him in the sum of $15,000, under the general law of tort, or, in the alternative, in the sum of $4,000 in installments of $10 per week, under Act No. 20 of 1914 ("Burke-Roberts Employers' Liability Act"). The case disclosed by the transcript is as follows:

Defendant owned timbered lands on and near Black river, in what is known as Black river swamp, 22 miles from Jonesville, and was having the timber felled and cut into sawlogs, which plaintiff had contracted to haul to the river bank at the rate of $3 per 1,000 feet; he to furnish his own teams, employ, control, and discharge the working men required, and to be his own master in the matter of handling his outfit and the methods to be adopted in the execution of the contract. He alleges that it was agreed as part of the contract that defendant was to transport the feed required for his stock without charge, but that allegation is not sustained by the proof; our conclusion being that Oliver Smith, who represented defendant in the negotiation of the contract, told plaintiff that defendant could do nothing of that kind at the time; that they would see about it later, after they began towing; that there was nothing definite or binding in what he said; and that, as a fact, defendant had not transported any feed prior to that which was being unloaded at the moment of the accident out of which this suit has arisen, though plaintiff appears to have then been at work for some time. Plaintiff admits that he was to do the unloading of the feed from defendant's boat, and, in effect, that he was to pay the expense of drayage and putting it aboard the boat.

The circumstances connected with the accident were as follows: Plaintiff had established his camp on the bank of the river, and about an hour before sundown on October 19, 1916, defendant's motorboat, in charge of its foremen, Williams and Smith, and carrying 12 sacks of oats for defendant, arrived and was made fast, by means of a three-fourth inch manila rope, to the root of a willow tree, immediately in front of the camp, the rope being attached to the stern of the boat, instead of the bow, for the reason that the oats were loaded on the after part, and, the bank being crooked and the depth of the

water varying, it was necessary or more convenient for unloading to back the boat against the bank than to lay it alongside, the fact that there was no current, or next to none, in the river at that time rendering that method of tying up unobjectionable. Plaintiff was not in his camp when the boat arrived, nor were his men, but he reached there a few minutes later, and was informed by Williams that he would be expected to take off his oats that night, to which he rather demurred, but, upon Williams' insistence, agreed to do so when his men came in from the woods; Williams' reasons for his insistence being that he was unwilling to take the chance of the sinking of the boat and loss of the oats during the night, and (though he may not have mentioned it to plaintiff) that he intended to sleep on the boat, and could do so more comfortably without the oats than with them. The men came in about dark, or soon after, and it was then threatening rain, with some wind, but the unloading began and progressed until most of the oats had been taken off, when the rope became detached from the root, and the boat began to drift or swing out from the bank. Williams started the engine (reversed) and again drove the stern against the bank and held it there, while Smith, taking up the loose rope and throwing it on the bank, called out (to the men on the bank) to make it fast to the tree. It was caught by McNally (one of the men who was assisting plaintiff in the unloading), who says that he ran around the tree with it and was engaged in tying it, when a limb (rather a fork) of the tree 14 or 16 inches in diameter came down and struck plaintiff (who was handling the stage plank) and himself, breaking plaintiff's leg and knocking him senseless. He says that the rope was drawn taut at the time, and he attributes the falling of the limb to the fact that there came a strong gust of wind which, driving the boat out, imposed a strain on the rope which shook the tree and brought down the limb because it was rotten. On the other hand, according to the testimony of Smith and of a man who was also assisting defendant, it appears not unlikely that McNally was engaged in tying the rope to the limb, and not to the body of the tree, when the limb fell, and, whether to one or to the other, had not finished tying it at that moment, and hence that it was not in a position to impose much of a strain or shock on the tree. Plaintiff's leg received attention without undue delay, and was put in plaster, but after a time had to be reset, and eventually the resetting did not bring a satisfactory result, but whether that was attributable to the surgery or to subsequent lack of care on the part of plaintiff we find it unnecessary to determine.

### Opinion.

[3] Plaintiff was an independent contractor, and not the servant or employé of defendant. Moffet v. Koch, 106 La. 371, 31 South. 40; Robiceaux v. Hebert, 118 La. 1089, 43 South. 887, 112 L. R. A. (N. S.) 632; Young v. Fosburg Lumber Co., 147 N. C. 26, 60 S. E. 654, 16 L. R. A. (N. S.) 255; Clark v. Tall Lumber Co., 140 La. 380, 73 South. 239. He has, therefore, no standing in court for the purposes of this claim under the Burke-Roberts Employers' Liability Act (No. 20 of 1914).

[4] As to his claim under article 2315 of the Civil Code, we are of opinion that he has failed to show that the injury of which he complains can properly be attributed to the fault or negligence of the defendant. It is alleged that, unknown to your petitioner and said laborers, the said boat had been faultily and negligently tied by defendant to a tree beneath a large limb which was decayed and in danger of falling and the danger was known, or ought to have been known, to defendant, that, through the negligence of

defendant, the tying was insecurely done and the rope came loose, that defendant's servant directed that it be wrapped around the trunk of the tree, which was done by one of plaintiff's employés, and that, being pulled taut by the drifting of the boat, it brought a pressure upon the tree, which was immediately followed by the falling of the rotten limb; the idea and argument being that the tree, 2½ or 3 feet in diameter at the place where the rope is said to have been tied, was so shaken by the pulling of the rope as to bring down the limb.

It is, however, beyond dispute that the boat was first made fast by means of the rope to the root of the tree, and that plaintiff, immediately in front of whose camp the tree stood, and who therefore had a much better opportunity of knowing its condition than had defendant or its employés, was afforded an additional hour of daylight within which to consider whether it was safe or unsafe to work beneath the limb, and that the tying of the rope to the tree, if tied it was, was done by plaintiff's assistant.

It may be that the rope was insecurely tied to the root, or that the root gave way, but that was not the proximate cause of the accident, since it was not then that the limb fell. According to McNally's testimony, that occurred after the rope had become detached from the root and he had wrapped it around the body of the tree and was engaged in tying it. Plaintiff was on the spot, however, and had been living there in his camp with the tree before his eyes, and if its dangerous condition was so obvious that defendant's employés, who were there for perhaps the first time, should have known it, why should not he also have known it? And, if he did know it, why did he not stop McNally, or better still, why had he not previously made the request that the boat be moved to a safer place? It had been landed there as the place most convenient to him, and as it required merely the touching of a button or the pulling of a lever, it would no doubt have been moved if such request had been made.

The fact is, as we see it, there was nothing in the appearance of the tree to suggest a doubt as to its capacity to hold the boat, which was but little over 40 feet long, and, as we infer, of rather light draft, since the river was almost without current, or to suggest that it could be so shaken by the pulling of the boat as to bring down an apparently sound limb or fork 14 or 16 inches in diameter. It is true that the limb was rotten, but defendant's employés did not know that any more than did the plaintiff, who had the better opportunity for finding it out; the decay being visible only to one looking down into the point of junction between the limb and the trunk of the tree from above. As to the trunk below the fork where the rope is said to have been tied by McNally, Capt. Lashley, who for five years previous to the trial had been in command of a tugboat engaged under the United States government in removing snags from Black river, testified that a tree of that size was not likely to have been appreciably shaken by any such pulling; also that Oliver Smith (defendant's foreman) pointed out to him a tree which he said was the tree here in question, and that he had cut it down and removed it, and in so doing had observed that the trunk was sound and was a tough variety of willow; and Smith testified that the tree pointed out by him was the tree in question. Our conclusions in the matter, however, are that the limb was blown down by a gust of wind, which is said to have moved just then at the rate of about 30 or 40 miles an hour, and that, if the tying of the boat had anything to do with its falling, it was because the rope on the second occasion was tied to the limb, and not to the body, of the tree. In general the rule which entitles an employé to rely upon the prevision and superior knowledge of his employer

in the matter of providing a safe place in which the employé is to do his work is inapplicable to the relations which subsist between an independent contractor and the person with whom he contracts. Ordinarily the independent contractor is expected to determine that matter for himself, and, if he chooses to work in an unsafe place, when a safe place would be provided for the asking, he does so at his own risk. In the instant case it was the plaintiff (an independent contractor) who may be said to have selected the place where he was working when injured, since it was he, and not defendant, who established his camp, and it was there that the oats were needed, and, in the absence of notice to the contrary, that they might reasonably have been expected to be delivered.

The trial judge awarded plaintiff $1,500 (being $5 per week for 300 weeks) and $100 in reimbursement of medical expenses. We are of opinion that the judgment so rendered should be annulled, and plaintiff's demands rejected at his cost.

And it is so ordered.

#### On Rehearing.

O'NIELL, J. The application for rehearing was based mainly upon the averment that, after the case was submitted to this court for decision and before we rendered judgment reversing the decree of the district court and dismissing plaintiff's suit, the defendant, appellant, agreed to abide by the judgment of the district court and have the appeal dismissed. In support of the averment that the contest had been thus settled and disposed of, the plaintiff, appellee, annexed to his petition for rehearing the correspondence had between his attorneys and the attorney for defendant, appellant; and he prayed that a rehearing be granted in order that the appeal might be dismissed, and the judgment of the district court be executed. In the alternative, he prayed that, if the appeal should not be dismissed, judgment should be rendered in his favor and in accord with his original petition.

We were not informed of any negotiations for compromise or settlement of the suit until the petition for rehearing was filed.

[5] As this court is without original jurisdiction to consider and pass upon the letters annexed to the petition for rehearing and filed as evidence of the alleged acquiescence in the judgment of the district court, the question of acquiescence should be determined by the district court; and for that purpose the case must be remanded.

It is ordered that this case be remanded to the district court for determination of the question whether appellant had agreed to abide by the judgment of the district court, when judgment was rendered herein by the Supreme Court, as alleged in appellee's petition for rehearing.