REDDING, Appellant, v. WILSON & CO.
OF LA.

(March 28, 1927.  Opinion and Decree.)

*(Syllabus by the Court)*

1.  **Louisiana Digest—Master and Servant
—Par. 54, 55.**

Defendant, a packing company, was not
negligent in failing to furnish plaintiff,
an independent contractor, a safe place
to work and to warn him of possible
hidden dangers, when plaintiff, who
had been for years consulted in an ad-
visory capacity and who was called
in on the day of the accident as an
expert to supervise the adjustment of
the ammonia pipes and valves of the
refrigerating plant, was injured by the
breaking of a corroded bolt, "not visi-
ble to the naked eye".

Appeal from Civil District Court, Divi-
sion "D". Hon. Porter Parker, Judge.

Action by John A. Redding against Wil-
son & Company of Louisiana, Inc.

There was judgment for defendant and
plaintiff appealed.

Judgment affirmed.

Joseph H. Brewer, of New Orleans, at-
torney for plaintiff, appellant.

John May, of New Orleans, attorney for
defendant, appellee.

JONES, J.    This is a suit for twenty-
five thousand four hundred and ten dollars
($25,410.00) damages for personal injuries.

In response to plaintiff's petition, de-
fendant filed an exception of no cause of
action, which exception was sustained by
the District Court, and plaintiff has ap-
pealed.

Plaintiff alleges that he is an experienced
mechanical engineer and was, for many
years, employed in such capacity by the
defendant, but left defendant's employ on
or about June 15, 1921, and ceased to be a
salaried employee from about that date;
that from time to time thereafter it was
defendant's custom and habit to call upon
petitioner to care for and adjust the am-
monia valves, piping and machinery of its
ice or refrigeration plant located at its
place of business, 401 St. Joseph street,
and that at such times defendant furnished
petitioner the necessary mechanic or helper
to assist petitioner; that upon such occa-
sions petitioner was employed at no spe-
cific or stipulated compensation, but was
called in as an engineer or ice-plant ex-
ecutive or expert to adjust and supervise
the adjustment of the valves, pipes and
machinery of said plant and that upon the
completion of his services, petitioner would
render a bill for their value, which would
in due course be paid by defendant; that
after leaving the regular employment of
defendant, petitioner was regularly em-
ployed by the Standard Oil Company of
Louisiana, as plant engineer, and that the
professional services rendered by petitioner
to defendant in connection with the adjust-
ment of the valves, pipes and ice-plant of
defendant were rendered during petitioner's
lunch hour and after his regular hours of
employment by the Standard Oil Company
of Louisiana.

Petitioner further says that on August
19, 1925, about eleven thirty o'clock a. m.,
he was called in by defendant's plant mana-
ger, and was engaged in the work of ad-
justing and supervising the adjustment of
the ammonia valves and pipe lines of said
ice-plant or refrigeration plant, with the aid

and assistance of a mechanic employed and furnished by defendant, when, suddenly, without warning, a terrific explosion of the ammonia cleanout to the ammonia expansion valve of said ice or refrigeration plant occurred, which resulted in your petitioner sustaining severe ammonia burns, etc.

Petitioner says further that such explosion and resulting injuries were due to the negligence of defendant, in maintaining and operating an ammonia ice or refrigeration plant, of which the bolt of the ammonia expansion valve cleanout was defective, and which contained a corroded bolt not visible to the naked eye of your petitioner, and the condition of which could not have been ascertained by your petitioner except by a thorough inspection of said machine at a time when the same was not in operation and that your petitioner was given no warning whatever of the unsafe or defective condition of said cleanout to said ammonia expansion valve, or the danger of an explosion thereof, by either the defendant or by any of its agents, servants, etc.; that he was requested and permitted, without warning, to work upon and in close proximity to said defective bolt and said defective ammonia expansion valve cleanout.

Petitioner further avers that defendant was under a legal duty to maintain its machinery in a reasonably safe and sound condition and to cause proper inspection thereof to be made at reasonable intervals and not to expose your petitioner to any unusual or extra hazards by reason of its failure to do so, or to warn your petitioner of the existence of such defects.

Petitioner's suit is thus brought primarily under Article 2315 of our Code.

But in the alternative, petitioner asks that should the court find, as a matter of law, that petitioner comes within the Louisiana Compensation Law, that there be judgment in petitioner's favor for such sum as the court may find to be due under such law.

Section 3, paragraph 8 of Act 20 of 1914, the Compensation Statute of Louisiana, reads, in part, as follows:

"The term wages as used in this act is defined to mean the daily rate of pay at which the service rendered by the injured employee is recompensed under the contract of hiring in force at the time of the accident."

Here plaintiff had no contract of hiring; on the contrary he avers in paragraph two of his petition that he left the employ of defendant on June 15, 1921, and in paragraph four that he was called there after lunch hour or after his regular business duties, as an expert to "adjust and supervise the adjustment of the valves, pipes and machinery of defendant"; that, for this work he was paid such reasonable charge as he might make.

There is no averment that defendant maintained any supervision or control over plaintiff in doing the work and it has been held by the Supreme Court in Deck vs. Gravel Logging Co., 152 La. 993, 95 So. 99, that the right to control and supervise the work of the injured person establishes the difference between a servant and an independent contractor.

We are of the opinion that the petition shows clearly that the plaintiff was an independent contractor and in this conclusion we think that plaintiff's attorney concurs as he cites us to no authority holding the contrary and devotes little or no discussion either in brief or argument to this point.

As plaintiff has no standing under the compensation statute, we will now discuss

his charges of negligence under Art 2315, C. C., the general tort law.

The above synopsis of the petition shows that the accident was caused by the breaking of a corroded bolt "not visible to the naked eye of petitioner" and that the negligence of defendant consisted in not having proper inspection of the machinery made at reasonable intervals so as not to expose petitioner to any unusual hazard.

In the case of Ryland vs. Wheeler Lumber Co., 146 La. 787, 84 So. 55, the Supreme Court held that the rule which entitles an employee to rely upon the superior knowledge of his employer as regards a reasonably safe place for work was generally inapplicable to an independent contractor, who is expected to determine that matter for himself.

Here the plaintiff alleges that he was called in as an expert to adjust the pipes and valves of the refrigerating plant of which he had had general supervision as a sort of consultation engineer since June, 1921, and he was certainly better qualified than plaintiff to pass upon the condition of the plant. Moreover, if defendant had taken down the entire plant and inspected all the bolts as plaintiff alleges was his duty, then defendant would not have needed the service of a consulting expert, as he would presumably have been familiar with all the details of the machinery.

A careful reading of the petition shows that plaintiff was expected to do everything necessary to keep the entire ice-plant in good condition and under the circumstances we do not think it was defendant's duty to warn him as to all hidden dangers.

In the selection of machinery, tools or material, the master is responsible to his servants for only ordinary care; that degree of care which a man of ordinary prudence, in the same line of business, would be expected to exercise to secure his own safety, were he doing the work * * * ordinary care does not require such tests as are appropriate only to the process of manufacture. Nor does it require that the article shall be taken to pieces, or subjected to any other test which is not shown to be practical, efficient and in ordinary use by careful users. (Cooley on Torts, 3rd Edition, p. 1143.)

Ordinary care requires only that precautions be taken against occurrences that can and should be foreseen, but does not require that one should anticipate unusual and improbable, if entirely possible, occurrences. (Rouseo vs. Gauche-Connor Co., 8 Orl. App., p. 217.)

"Defendants have been repeatedly relieved from the charge of negligence where the act done, or omitted to be done, was one which the party had no reasonable ground to know or believe or could not reasonably be held to foresee in the light of the attending circumstances, or which he did not know would carry with it injury as its natural and probable consequence. (Gilliam vs. Texas & Pacific R. R. Co., 114 La. 272, 38 So. 166.)

"A mere failure to guard against a certain result is not actionable negligence unless under all the circumstances it might have been reasonably foreseen by a man of ordinary prudence." (N. O. & N. E. R. R. vs. McEwen & Murray, Ltd., et al., 49th Annual, p. 1184.)

It is useless, however, to continue a discussion of the foregoing general principles, when, our Supreme Court has, in Feely vs. National Packing Co., 141 La. 903, 75 So. 837, enunciated a rule clearly applicable to this case.

Paragraph four of the syllabus reads as follows:

"Where the defendant packing company, being unable to discover the cause of an

unusual odor in its cold storage plant, asked another packing company to send its engineer to locate the ammonia leak, and while searching for the cause of the odor, he was killed by an explosion of gas entering the building through a drain pipe, the packing company was not negligent in failing to warn him not to strike a match or to tell him that the odor might proceed from some cause other than ammonia, as no one knew the origin of the odor any better than he did, and he knew that his services had been requisitioned because the others had to acknowledge their incompetence in the matter."

For above reasons the judgment is affirmed.