## THEUS v. SMITH.

### No. 5780.

Court of Appeal of Louisiana.
Second Circuit.

March 8, 1939.

Rehearing Denied March 31, 1939.

Writ of Certiorari and Review Denied
May 29, 1939.

B. F. Roberts, of Shreveport, and Robt. H. Wimberly, of Arcadia, for appellant.

Campbell & Campbell, of Minden, for appellee.

DREW, Judge.

The lower court, in a well written opinion, has set out the issues, correctly found the facts and arrived at the proper conclusion in this case upon the issues presented to it. The opinion is as follows:

"This is a suit for a writ of injunction to arrest the sale under execution of three judgments, of a tract of land containing 40½ acres, described in detail in the petition.

"The plaintiff alleges she is the owner of the land by purchase from Cornelius Theus on December 12, 1934, recorded in Book 99, page 572, a copy annexed by reference, and that since her purchase she has been in open and notorious possession of the land as owner, and that it is worth $400; that in certain suits styled H. W. Smith v. Arthur Theus in the Fifth Ward Justice of Peace Court, the said Smith has caused pretended writs of fieri facias to issue, under which T. B. Madden, Constable, has pretended to seize and advertise for sale on November 30, 1937, the said land. A copy of the advertisement is annexed. She alleges that she bought and paid for the land with her own separate paraphernal funds, under her separate control and administration from funds she received by donation from her mother.

"She prayed for and obtained a temporary restraining order and a rule to show cause directed to defendants. She prays for a preliminary writ of injunction and for it to be perpetuated.

"The rule to show cause was not tried. Instead, defendants answered to the merits and the case has been tried on the merits.

"Answering, defendant denied the substantial allegations of the petition, and alleged affirmatively that the property is in fact owned by Arthur Theus or the community existing between him and the plaintiff, and therefore subject to sale for the debts of Arthur Theus. In the alternative, that the various acts by which plaintiff pretended to acquire title to the land were false and fraudulent and simillated and designed to place the property of Arthur Theus in the name of his wife and beyond the reach of his creditors, and are therefore null and void. On these issues the case went to trial.

"In support of her allegations, plaintiff testified that about a week before her mother, Annie Theus, died, she gave her $250 in a money belt, which is in evidence; that the denomination of the money was one $100 bill and three $50 bills, and that she kept the money in the same belt, intact, spending none of it until 1934, eight years later, when she paid Cornelius Theus the $100 bill for the land.

"Virgil Greer testified that he was present and saw plaintiff's mother give her the money and that it was one $100 bill and three $50 bills.

"Jim Theus, son of plaintiff, says he was present and saw plaintiff's mother give her the sack and money.

"Matt Theus and Jerry Theus, brothers of plaintiff, testified that their mother had money when she died or shortly before.

"This is about as far as the witnesses for plaintiff were in accord. Asked about when and where she paid Cornelius Theus the $100 for the land, plaintiff said she gave him the money at her home sometime before she secured the deed. She would not fix any definite time before, but was sure the money was paid at her home sometime before she received the deed, and that she was not present when the deed was executed at Mr. Langston's office.

"Cornelius Theus, from whom she received the deed, says that plaintiff and her son came with him to Minden and that plaintiff paid him the $100 bill in the office of Mr. R. F. Langston, the attorney and Notary before whom the act was passed.

"Mr. Langston has since died. His son, R. F. Langston, Jr., who was a witness to the deed, says he was present when it was signed. He does not recall seeing any money passed and does not remember ever seeing a $100 bill paid by anyone in his father's office. This denomination of bills may be in common usage in some places, but here they are large enough to attract attention and Mr. Langston would likely remember such a bill, if it had been used in paying the consideration in his presence.

"It is shown by the testimony of W. B. Smith and other witnesses, that not so long before the mother of plaintiff died, her son, Mack Theus, was convicted for making whiskey in Bienville Parish, and that in order to raise $500 to pay his fine and release him from jail, the mother deeded her land to Smith to pay a debt that Mack Theus, with whom she lived, owed, and to get the money to pay Mack's fine. This evidence refutes the idea that the mother of plain-

tiff was carrying around on her person a large sum of money.

"It also seems passing strange that when the mother died a week or so after giving plaintiff $250 in cash, to the knowledge of the other children, or some of them at least, that a collection was taken up among the children to raise funds for the funeral expense, and according to the evidence, Edith Theus did not contribute to the fund.

"Finally, this land, with other land was bought by Cornelius Theus and Arthur Theus (husband of plaintiff) in 1914, partly on terms of credit. In 1922, Arthur Theus deeded his interest in the land to Cornelius. When Cornelius was asked about this transaction, he first said Arthur had gotten in trouble about killing a man and needed some help, but when shown that it was 1925 when Arthur got into trouble, he then said that Arthur had not paid his part of the purchase price and he took it over and paid it out.

"On the whole, the testimony on which I am asked to declare the property to be the separate paraphernal property of plaintiff is so unsatisfactory that I cannot see how it can be made to form the basis upon which to rest a decree. The story of plaintiff that she kept this money from 1926 to 1934 without ever spending a cent of it is wholly unreasonable, and the testimony of the witnesses she offers in corroboration is conflicting on many points on which the witnesses could not foresee that they would be examined.

"Considering the case as a whole is with defendants on the facts, I deem a discussion of the cases cited and legal propositions tendered by counsel would serve no useful purpose.

"For these reasons, there will be judgment rejecting the demands of the plaintiff with costs."

From this judgment plaintiff has appealed to this court.

Here the plaintiff has filed what she styled a motion to consider proceedings in Justice of Peace Court. It is as follows:

"In this cause now comes Edith Theus, plaintiff-appellant, and files herein certified copies of all the proceedings in the cases of H. W. Smith v. Arthur Theus and alias in the Fifth Ward, Justice Court, Webster Parish, Louisiana, being numbers *292, 293* and *294* on the docket of said court.

"Your plaintiff-appellant now requests that these documents should be considered in passing upon the issues involved in this case. That the record as originally filed in this court shows that the suits in which the property involved in this case had been seized, were suits against Arthur Theus, plaintiff's husband. That the original record does not show whether judgment was confessed, rendered on default or the nature of the defense, if any, that was made. That, at any event the land involved in this suit could not be seized and sold for the reason that the title to same was standing on the records in the name of your plaintiff-appellant. Therefore, plaintiff prays that the court consider these documents filed or, in the alternative, that after hearing, the court reverse the judgment and remand the case to the district court in order that said documents or proof of the proceedings of said cases in the Justice of Peace Court, above referred to, be received in evidence in this case.

"She prays for any other order necessary in the premises and for general relief."

Attached to the motion are copies of the three judgments upon which execution was issued herein rendered by the Justice of Peace Court of Ward 5, Webster Parish, Louisiana, which judgments show on their face that Arthur Theus had confessed judgment in favor of W. B. Smith & Company, Incorporated, and said judgment had been assigned to H. W. Smith, the defendant herein.

Plaintiff's contention is that under the last paragraph of Article 2334 of the Revised Civil Code, although the property seized was community property, it could not be sold or mortgaged without the written consent or authority of the wife. That part of the Article reads as follows: "Common property is that which is acquired by the husband and wife during marriage, in any manner different from that above declared. But when the title to community property stands in the name of the wife, it can not be mortgaged or sold by the husband without her written authority or consent. [As amended, Acts 1912, No. 170; 1920, No. 186.]"

Plaintiff contends that under this Article of the Civil Code and the case of Bywater v. Enderle, 175 La. 1098, 145 So. 118, the evidence attached to the motion is sufficient in law to justify the court in reversing the judgment of the lower court and granting the injunction, as prayed for. If it were in our province to consider the evidence, which it is not, we would be forced to dis-

agree with plaintiff's contention. If plaintiff's husband had confessed judgment in favor of one claiming the ownership of the land standing in his wife's name, then plaintiff's contention would be correct, under the Bywater v. Enderle case, supra, but that is not the case here. The contention was for a monied judgment against himself. Community property is always liable for the debts of the community, whether standing in the name of the wife or husband. If plaintiff's · contention were the law, any unscrupulous person could acquire all the community property in his wife's name, then contract as many debts as possible and, when sued, allow judgment to go by default or confess judgment, and then sit idly by enjoying the property and laughing at his judgment creditors trying to persuade his wife to give her written consent for them to execute on the community property.

■ If we should remand the case to allow the introduction of the testimony annexed to plaintiff's motion, it would be a vain thing for, under the allegations of her petition, the evidence would not be admissible. The only allegation in plaintiff's petition upon which she claimed the right to an injunction is that the property seized was her separate and paraphernal property; and for this attached evidence to be admissible, there necessarily would have had to be an alternative plea, in the event the court found the property to be community property.

The motion is overruled and the judgment of the lower court is affirmed, with costs.

■ Since the above opinion was written in this case, but before it was rendered, plaintiff filed in this court a plea of prescription of ten years, in which she alleged that the three judgments under execution by defendant and under which plaintiff's land was seized and advertised for sale to satisfy, that is, Nos. 292, 293 and 294 of the Fifth Ward Justice of Peace Court of Webster Parish, Louisiana, were rendered and signed on September 13, 1928; that more than ten years have elapsed since the signing of said judgments and that they have not been revived and are therefore prescribed. It is further prayed for by plaintiff that if we cannot sustain the plea on the showing made, the case be remanded to the lower court for a trial on the plea of prescription. Accompanying the plea is an affidavit made by plaintiff to the effect that all the allegations made in the plea are true and correct.

Article 3464 of the Revised Civil Code provides: "Prescription may be pleaded in every stage of a cause, even on the appeal, but it ought to be pleaded expressly and specially before the final judgment."

Article 3465 provides: "But prescription cannot be pleaded in the Supreme Court, unless the proof of it appear from documents exhibited or testimony taken in the inferior court."

Under the above quoted Articles which apply to the Court of Appeal, as well as to the Supreme Court, a plea of prescription may be filed here any time before final judgment, but before an appellate court can consider the plea, the record must disclose from documents filed in the lower court or testimony taken there, that the plea is well founded. If no documents or testimony were offered in the lower court which tend to prove the prescription, it is certain that such a plea cannot be considered by an appellate court, when the plea is not filed below. Documentary testimony cannot be filed in the appellate court to establish prescription. Ryland v. Wheeler Lumber Company, 146 La. 787, 84 So. 55; State ex rel. St. Martin v. Police Jury of the Parish of St. Charles, 28 La.Ann. 272.

In the case of Platt v. Bouanchaud, Sheriff, 141 La. 391, 75 So. 91, 92, the Supreme Court of this state said: "One of the grounds or allegations on which a defendant in executory proceedings may obtain a writ of injunction without bond, under article 739 of the Code of Practice, is that the action for the recovery of the debt is barred by prescription; another is that the defendant has paid the debt for which he is sued. The injunction in this case was obtained on the allegation of payment, not prescription. If the plaintiff in injunction failed to prove that the debt was paid, the writ of injunction was properly dissolved, and the judgment dissolving it could not be reversed and the injunction reinstated and perpetuated on a plea of prescription filed in this court."

And in Whittington v. Heirs of Pegues, 165 La. 151, 115 So. 441, 443, the Supreme Court said:

"Plaintiffs have filed in this court a plea of prescription acquirendi causa. To support a prescription of that sort there must have been possession during the time fixed by law, and that possession must of course be shown by evidence.

"We find no evidence in the record on the question of possession; and hence the plea cannot be considered, for, although prescription may be pleaded at any time, even on appeal, nevertheless it cannot be pleaded on appeal, 'unless the proof of it appear from documents exhibited or testimony taken in the inferior court.' R.C.C. arts. [3463], 3464, 3465."

█ In the case at bar there was no documentary evidence or testimony offered in the lower court upon which a plea of prescription could be based. The judgments were not offered in evidence, nor was there any testimony as to the date they were rendered and signed. The sole question presented in the lower court was whether the property under seizure was the separate paraphernal property of plaintiff or the property of the community existing between plaintiff and her husband, the judgment debtor.

For the above reasons, we cannot consider the plea of prescription.