WILLIE EVANS, by Gideon Pendleton, Guardian, v. DARE LUMBER
COMPANY.

(Filed 12 September, 1917.)

1. **Master and Servant—Contracts—Independent Contractor — Employment at Will—Hiring Employees.**

   One who is employed by the owner of a lumber manufacturing plant to cut laths from lumber furnished by the owner with machinery at his mills, at so much per thousand, the employment terminable at the will of the owner, is not an independent contractor within the meaning of the principle that the owner is not liable for the negligence of his independent contractor causing injury to the latter's employees, and the fact that the contractor hired and discharged the employees is not controlling.

2. **Master and Servant—Negligence—Statutes—Child Labor—Employment.**

   It is negligence on the part of the owner of a lumber manufacturing plant to allow a boy ten years of age to work in his power-driven mill, at a dangerous place, where the live rollers to carry the lumber to the various machines were left unboxed and exposed, causing the injury complained of, which occurred while the boy was engaged at his work with the knowledge of his superintendent, who made no objection.

3. **Master and Servant—Independent Contractor—Contracts—Negligence—Dangerous Instrumentalities.**

   The master's nonliability for the acts of an independent contractor does not obtain when the work engaged in is inherently dangerous, and the injury complained of was caused by the negligence of the master himself in respect to conditions under his control.

4. **Negligence—Child Labor—Manufacturing Plants—Statutes—Master and Servant—Contributory Negligence.**

   The provisions of our statutes, Rev., sec. 1981 (a), forbidding employment of children under 12 years of age at any factory, etc., and Rev., sec. 3366, amended in 1907, making it a misdemeanor for such factory to knowingly and willfully employ a child under that age, include within their provisions the working of children under the forbidden age at such places with the actual or special knowledge of the owner or his superintendent; making it negligence *per se* when such child is injured, with the presumption that it was not guilty of contributory negligence.

5. **Contracts — Independent Contractor — Trials — Evidence—Questions for Jury.**

   When the evidence is conflicting, the question of independent contractor is one for the jury.

Appeal by plaintiff from *Justice, J.,* at Special June Term, 1917, of Pasquotank.

This is an action for personal injuries. The plaintiff, who is suing by his guardian, was 10 years old at the time his arm was caught and torn off, when attempting to straighten a board on the "live rollers," while working in the defendant's mill, as ordered to do. These live rollers were used for conveying lumber from place to place in the mill,

and were fitted with rapidly revolving rollers and dangerous cog wheels, which were not boxed and totally unprotected.

There was evidence "that most live rollers are boxed in, and that the live rollers in the defendant's mill were boxed in clean down to the lower end of the slasher, but that part which came down where the defendant was working was not boxed in; that they box them in because they are dangerous." This child had been hired to work by one Tony Spruill, who had charge of the defendant's lath room. The defendant was operating a large saw and planing mill, one of the departments of which was known as the lath room. The floor of this room was about four feet lower than the floor of the big mill, but it was under the same roof, with no partition, and there were several dangerous machines, *i. e.,* the button saw, the lath saw, and the cut-off saw. The live rollers at which the plaintiff was hurt were located in the big mill near the lath room.

Tony Spruill, who hired the plaintiff, was operating this lath room, making laths for the defendant at so much per thousand under a contract with the general manager of the mill. The lath room and all the machinery in it belonged to the defendant. Spruill made the laths out of slab wood sent down by the defendant from the big mill under directions of the defendant's foreman. The laths, after being sawed and bundled, were delivered to other employees of the defendant and sold for defendant's profit. Under his contract with defendant's manager, Spruill was to pay his helpers out of the 60 cents per thousand which he received. He used as helpers two men and five boys, three of the latter, one of them the plaintiff, being about 10 years old. At the time of his injury, 19 October, 1911, the plaintiff was throwing wood from the big mill into the lath room under orders from Spruill. He took the wood in the big mill to the live rollers, and, when standing about twelve or fourteen feet from them, the plaintiff was told to straighten out a board on the live rollers, in order to throw the wood over. The plaintiff had to go close up to the live rollers, as the wood was piled against them. He was caught in them, lifted clear of the floor, and hung there until his arm was pulled off. He could not have been caught by the live rollers if they had been boxed in, as is usually done. The wood had thus been piled in the big mill under permission from one of defendant's foreman. The man who ordered the plaintiff to straighten the board was in the big mill, as was the plaintiff, at the time he lost his arm.

The defendant's manager had seen the plaintiff there at work, and nothing was said to him or to Spruill by any superintendent of defendant's company, nor was there any objection to his working there. After

he was injured one of the defendant's superintendents said to Spruill, speaking of another of these boys about plaintiff's age, that he was too small to be working there.

At the close of the evidence for the plaintiff, the judge allowed the defendant's motion for a nonsuit.

*E. L. Sawyer and Meekins & McMullan for plaintiff.*
*Aydlett & Simpson and Ehringhaus & Small for defendant.*

CLARK, C. J. It is six years since this boy's arm was torn off, and we have just reached the nonsuit stage in this action.

There was negligence on the part of the defendant in allowing this boy 10 years of age to work in the factory; in allowing him to work in a dangerous place, and in allowing the live rollers to be operated without being boxed. The defendant's superintendents saw the boy there and made no objection to his working.

The only defense the defendant attempted to set up was that Tony Spruill, who hired the boy and paid him, was an independent contractor. In *Wiswall v. Brinson,* 32 N. C., 554, *Pearson, C. J.,* in holding that the owner of a house, who contracted with another to remove it (the contractor employing his own hands and being paid by the job), is liable for the negligence of the contractor, whereby a third person was injured, said that the rule excepting an employer from liability for the acts of those who work under his employment is restricted to those who exercise an independent calling.

In this case the employer had power to terminate Spruill's employment at any time. This gave the defendant potential control over him, and is conclusive that Spruill was not an independent contractor for whose negligence the defendant was not responsible. It is said in 14 R. C. L., 72, that it is idle and vain to assert that an employee is an independent contractor because he has the sole right to hire and discharge his help when his own employer has the unquestioned right to terminate the contractor's employment at will.

Neither does the doctrine of the master's nonliability for the acts of an independent contractor apply to protect the master when the injury is caused by such inherent danger in the work, as in this case, which called upon the master to observe the duty of absolute control, and most especially when the machinery which Spruill was operating was dangerous and by the negligence of the defendant was unprotected by boxing. *Young v. Lumber Co.,* 147 N. C., 26.

The defendant owed the employees of Spruill, even if he had not been subject to discharge at the will of the defendant, the same duty to furnish a safe place to work and safe machinery that it owed to its other

employees. *Houghton v. Pilkington,* 28 Ann. Cas., 792; *Pugmire v. R. R.,* 14 Anno. Cas., 384; *Aga v. Harbach,* 4 Ann. Cas., 441, and *Paducah Box Co. v. Parker,* 143 Ky., 607.

This question of it being negligence *per se* to work children of tender years in factories first came before this Court in *Ward v. Odell,* 126 N. C., 946, where a boy 12 years of age lost his eye, and in *Fitzgerald v. Furniture Co.,* 131 N. C., 636, where a boy 9 years old had his hand injured in a factory. In both cases it was held by a divided Court (the writer announcing the opinion of the majority) that the defendant was guilty of actionable negligence, though there was at that time no statute against child labor. In the latter case a table of ages fixed in other States under which children could not be exposed to such labor and dangers was set out. Since then this State has enacted Revisal, 1981 (a), which forbids the employment of any child under 12 years of age in any factory or manufacturing establishment within the State.

Revisal, 3362 (passed in 1903 and amended in 1907), provides that if, after 1 January, 1908, "Any mill owner, superintendent, or other person, acting in behalf of a factory or manufacturing establishment, shall knowingly and willfully employ any child under 12 years of age to work in any factory or manufacturing establishment . . . he shall be guilty of a misdemeanor."

It is not only the purpose of these statutes to protect immature children against physical depreciation, but against dangers from working around machinery to which they would be liable by reason of their curiosity and indiscretion. The language of the statute contemplates not only those cases in which there is direct employment of such children by the owner of a factory or manufacturing establishment, but all cases in which a child under the forbidden age is worked there with the actual or special knowledge of the owner or of the superintendents in charge of the work.

In this case the lath room was a part of the big mill. Spruill, the immediate employer of the child, had no fixed term of contract, but was subject to discharge at any moment, and, therefore, was working under the control of the defendant; and besides, the child was injured in the big mill itself and in obeying instructions, which required him to remove wood stacked up in the big mill, by order of the defendant's superintendent, and in such dangerous proximity to the live rollers that the removal of the wood caused him to fall into the live rollers, which were unguarded by any boxing, whereby the child sustained this terrible injury and pain of having his arm torn off.

In *Partelle v. Coal Co.,* Ann. Cas., 1913, E., 338, the Supreme Court of Illinois, construing the child labor statute of that State, said: "It is contended that this act can only apply when the relation of master

Evans *v.* Lumber Co.

and servant actually exists. We cannot agree with this contention. Section 1 of the Child Labor Act of 1903 reads, in part: 'No child under the age of 14 years shall be employed, permitted, or suffered, to work at any gainful occupation in any manufacturing establishment, factory, or workshop.' The object of this statute was to prevent absolutely the employment of children under the age of 14 years in the occupations mentioned therein, and a construction should be given which will effectuate that purpose, if it can be done consistently with the wording of the statute. Those who are liable under it are bound, at their peril, to see that children are not employed contrary to its provisions. To put the construction on this statute contended for by counsel for appellant would leave the words 'permitted or suffered to work' practically without meaning. It is the child's working that is forbidden by the statute, and not his hiring; and while the statute does not require employers to police their premises in order to prevent chance violations of the act, they owe the duty of reasonable care to see that boys under the forbidden age are not permitted or suffered to work there contrary to the statute."

Since the passage of our act, Congress, in pursuance of a humane desire to protect childhood from overwork and the dangers of employment in factories, has used its control over interstate commerce to raise the ages under which employment of children is allowable by forbidding interstate shipments of goods from any factory in which children under the forbidden age are worked. It has been held that the violation of our statute is negligence *per se* (*Leathers v. Tobacco Co.,* 144 N. C., 333; *Starnes v. Mfg. Co.,* 147 N. C., 556), and there is a presumption that the child is incapable of contributory negligence.

In *McGowan v. Mfg. Co.,* 167 N. C., 192, where a child under 12 years of age was injured in the lapper room of the defendant's mill, it was held that the defendant was liable though the child was not on the pay roll of the mill, but had been merely permitted to work there.

Upon the evidence, the defendant could not defend upon the ground that Spruill was an independent contractor, and that it was released from liability when the child was worked in the defendant's mill, whose officers could have seen, and did see, that he was under the prescribed age and when the defendant had furnished the dangerous machinery which, by reason of its unboxed condition, caused the injury. But if there had been an absence of these circumstances, the evidence would have left it a mixed issue of fact and law whether Spruill was an independent contractor, and in any view it would have been an error to direct a nonsuit.

Reversed.