WESTERN INDEMNITY CO. v. PRATER et al. (No. 2125.)

(Court of Civil Appeals of Texas. Texarkana. June 3, 1919. Rehearing Denied June 12, 1919.)

MASTER AND SERVANT ☞405(2)—WORKMEN'S COMPENSATION—"EMPLOYÉ"—INDEPENDENT CONTRACTOR—EVIDENCE.

Evidence showing employer's control of mode of work of hauling clay for brick manufacturing *held* to support finding that deceased when killed was not an independent contractor, but an "employé," as defined in Acts 35th Leg. c. 103, pt. 4, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—82); it being assumed that the statutory definition does not distinguish an "employé" from a "servant" at common law, as distinguished from independent contractor.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Employé.]

Appeal from District Court, Henderson County; Jno. S. Prince, Judge.

Proceedings under the Workmen's Compensation Law by Mrs. Talitha Prater and another to recover for death of O. L. Prater, employé, opposed by the Western Indemnity Company. The Indemnity Company sued to set aside the award for claimants, and from judgment denying it relief and awarding recovery to claimants according to findings of the Industrial Accident Board, the Indemnity Company appeals. Affirmed.

This suit was brought as provided by section 5, pt. 2, of the Workmen's Compensation Law (Acts 33d Leg. c. 179), as amended by the Act of March 28, 1917 (General Laws, p. 269 [Vernon's Ann. Civ. St. Supp. 1918, art. 5246—44]), to set aside an award based on findings of the Industrial Accident Board as follows: (1) That the Athens Pottery Company on August 21, 1917, "was a subscriber to the Employers' Liability Act," and carried a policy of insurance with appellant; (2) that on said day O. L. Prater was in the employ of said pottery company, and as its employé "was covered by said policy of insurance"; (3) that on said day, "while in the course of his employment, said Prater sustained injuries resulting in his death"; (4) that the "average weekly wage of the said O. L. Prater at the time and prior to sustaining said injuries was $14.92; (5) that Mrs. Talitha Prater, widow of said O. L. Prater, and Harry Prater, his minor son, as his "legal beneficiaries, were entitled to receive of and from the Western Indemnity Company a weekly compensation of $8.65 for the death of said O. L. Prater for a period of 360 weeks, beginning August 21, 1917." The ground upon which appellant sought to have the award set aside was that said O. L. Prater at the time he was injured was not an employé of said pottery company, and "was not covered

by said policy of insurance as such employé or in any other capacity." It appeared from testimony before the court that the pottery company obtained clay it used in its business of making jugs, etc., from a pit about half a mile from its plant. The company employed four or five men with teams to haul the clay, paying them 36 cents per ton for the service. O. L. Prater was one of the men employed, and had been engaged in the work during about a year before August 21, 1917, when he was killed. He did not himself always drive the team he used, but hired a man to drive it during part of the time. He had nothing to do with mining or excavating the clay. It was mined by men employed by the pottery company for the purpose. Those men, or others employed by the pottery company, loaded or assisted Prater as they did other haulers, in loading the clay on his wagon. He unloaded same without assistance at places the company designated at its plant. It was while his wagon was being loaded at the pit that the clay caved in on him, so injuring him as to cause him to die a short time thereafter. A man named Hunt was the pottery company's foreman at the pit, and as such hired Prater to haul clay. Hunt testified:

"Mr. Prater and the other hands employed like him loaded their wagons or had them loaded under my specific directions. They were liable to be discharged at any time for misconduct. They were supposed to do what I wanted them to do or be discharged. They were just to do what I said. All of those hands that worked at that place did what I said. I done the hiring of the men. * * * Sometimes Mr. Prater drove himself, and then again he would have a hand. * * * I done the hiring and run that part of the business right there. The extent of my business there was to direct them where to get the clay, tell them what to do, show them what to do. Mr. Prater had something else to do except to haul clay. He had to do what I told him to. If I didn't want him to haul clay, I would put him at something else. I had them scraping, had them plowing, and had them doing lots of things. I didn't have Mr. Prater doing other things, just hauling clay, the day he was killed. But all of them does scrape, plow, anything I say for them to do. I hired Mr. Prater to haul clay. He was to get 36 cents per ton for hauling clay. When I wanted him to do anything else, I paid him 30 cents an hour for it, paid him 30 cents an hour for his team and driver. * * * Mr. Prater didn't keep a driver all of the time, but he usually kept a driver. * * * If the driver didn't suit, I would send him back home. * * * I had nothing to do with the driver, except if an incompetent driver was sent I stopped him. If they sent a man that wouldn't do a day's work, we didn't have anything to do with him. As to its being a fact that Mr. Prater could work or lay off a day or two if he wanted to, they always asked me if they wanted to lay off. If we wanted them to haul, they hauled, and if they don't want to haul, they stay at home. We have got to have it hauled. We wouldn't keep one in our employ that did insufficient work."

The appeal by the indemnity company is from a judgment denying it the relief it sought, and awarding Mrs. Prater, for herself and as guardian of said minor, a recovery in accordance with the findings of said accident board.

W. R. Bishop, of Athens; and Carden, Starling, Carden, Hemphill & Wallace, of Dallas, for appellant.
A. B. Watkins, of Athens, for appellees.

WILLSON, C. J. (after stating the facts as above). The assignments present only this question: Did the testimony warrant the finding that O. L. Prater was an "employé" of the Athens Pottery Company within the meaning of the Workmen's Compensation Law, and engaged in service as such at the time he was killed? Appellant's contention, if sustained, would require the question to be answered in the negative, for it insists it appeared from "the undisputed evidence that the deceased at the time of his death was acting as an independent contractor, and not as an employé."

In the law referred to (Acts 1917, p. 291 [Vernon's Ann. Civ. St. Supp. 1918, art. 5246—82]) the word "employé" as used therein is declared to mean:

"Every person in the service of another under any contract of hire, * * * except one whose employment is not in the usual course of trade, business, profession, or occupation of his employer."

In deciding the question it will be assumed that the definition in the statute does not distinguish the "employé" to which it applies from a "servant" at common law, and therefore that the distinction made by that law between a "servant" and an "independent contractor" applies in the case. Litts v. Lumber Co. (N. Y.) 120 N. E. 730.

"The main test," says Mr. Bailey (1 Master & Servant, p. 107), "in determining whether one is an independent contractor or merely a servant, is whether the employer has the right to control the mode of doing the work. Ordinarily, if the employer retains control, the relation is that of master and servant rather than of contractee and contractor; but if the employé has the right of control he is generally an independent contractor."

"Only such an employé," said the court in Moore v. Kopplin, 135 S. W. 1033, "as is free to do the work he is employed to do in his own way without directions, orders, let, or hindrance from his employer, being responsible to him only for the result, is regarded as" an independent "contractor. In other words, he must be independent and free from the control of his employer."

It cannot be denied that much of the testimony tended to show that Prater, while hauling the clay, was free from control by the pottery company; but we think enough of it

was to the contrary of that view to warrant the finding in question.

It will be noted that it appeared from testimony referred to, or set out, in the statement above, that Prater was hired by Foreman Hunt and was "supposed to do what Hunt wanted him to do or be discharged"; that the company had a right to tell him when to begin and when to quit hauling, and that, if Hunt "didn't want him to haul clay" he would "put him at something else"; that Hunt directed him where to get clay, and his wagon was loaded under "specific directions" from Hunt; that he unloaded the clay at places designated by the company; that, while he at times hired a man to drive his wagon instead of driving it himself, if the man he hired was incompetent or did not suit Hunt, Hunt "would send him back home"; and that he always asked Hunt if he "wanted to lay off."

When the testimony pointed out is considered with reference to the test recognized by the authorities, and stated by Mr. Bailey in the excerpt above, we think it must be held to have been sufficient to support a finding that Prater at the time in question was not an independent contractor, but was an employé of the pottery company. If that testimony was true, the pottery company had "the right to control the mode of doing the work" Prater was engaged in doing at the time he was killed. For cases with facts similar to the facts shown by the testimony above referred to in which similar conclusions were reached, see Van Simaeys v. George R. Cook Co., 201 Mich. 540, 167 N. W. 925; Tuttle v. Lumber Co., 192 Mich. 385, 158 N. W. 875, Ann. Cas. 1918C, 664.

The judgment is affirmed.

---

⬡═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes