**No. 4053**

**Second Circuit**

—

**ARMES v. WILLIAMS BROS., INC.**

—

(July 14, 1931. Opinion and Decree.)
(November 3, 1931. Rehearing Refused.)

—

Julius T. Long, of Shreveport, attorney for plaintiff, appellee.

John B. Files, of Shreveport, attorney for defendant, appellant.

McGREGOR, J. This is a suit brought by the plaintiff against the defendant for damages on account of injuries alleged to have been received by him while he was in the employ of and working for the defendant driving a team of mules on September 2, 1929. In his petition plaintiff alleges that the defendant is indebted to him in the sum of $20 per week for 200 week under the Employers' Liability Act (Act No. 20 of 1914 as amended) on account of total loss of the use of an arm. In the alternative he alleges that if the court should hold that his injury is not compensable under this act then defendant is liable to him for damages under article 2315 of the Civil Code of Louisiana in the sum of $15,000. The defendant is a foreign corporation doing business in the state of Louisiana with a duly appointed agent for service residing in Morehouse parish, where the suit was brought. Plaintiff is a farmer residing at Ore City in the state of Texas, and during the summer months, in order to add to his income, he brought three teams of mules to Webster parish where the defendant was engaged in the construction of a pipe line toward the city of Shreveport. He hired these teams to the defendant for $7 per day for seven days per week, with the understanding that he was to furnish and pay the drivers. He hired two drivers at $3.50 per day each and drove the other team himself, so that it may be said that he received $3.50 per day for his services as the driver of one of the teams. These teams were used in the course of the construction of the pipe line wherever and whenever they were needed to do hauling and pulling of any kind. On September 2, 1929, plaintiff was called upon to take one of his teams and move a pot of hot tar which was in a large container set upon some kind of vehicle. Heeding these instructions, he hitched his mules to this contrivance and was proceeding to haul the pot of tar from where it was to the place directed. As he was thus moving it the pot overturned and spilled some of the hot liquid upon his hand and arm, burning him severely. The cause of the accident is alleged to have been the roughness of the ground over which the pot was being hauled and the failure to securely fasten the lid or cover on the pot by the one whose duty it was to do so.

As a result of this burn the plaintiff was totally disabled from September 2, 1929, to about May 13, 1930, and at the time of the signing of the judgment on February 17, 1931, was considered by the judge of the lower court to be suffering a disability of at least one-half.

The defendant filed a plea to the jurisdiction based on the allegation that "defendant has no jurisdiction" within the Fourth district court and that it has "no one upon whom service may be made." Reserving its rights under the plea to the jurisdiction, the defendant also filed an exception of no right of action under the provisions of the Civil Code. Then, with full reservations of all its rights, an answer was filed which amounts practically to a general denial. The fact of the injury

is admitted, but it is contended that plaintiff was an independent contractor and that, therefore, he is not entitled to compensation under the Employers' Liability Act (Act No. 20 of 1914), and that there was no negligence on the part of the defendant and that, therefore, there was no liability under the provisions of the Civil Code of Louisiana. On trial in the lower court there was judgment for plaintiff for the sum of $13.65 per week from September 2, 1929, to March 1, 1930, and thereafter for the sum of $6.82 per week during disability, with the proviso that the whole of said weekly payments should not exceed one hundred fifty weeks. The judgment also fixed the fees of the expert witnesses and of plaintiff's attorney. From this judgment the defendant has appealed and plaintiff has answered the appeal asking that the judgment be raised to the amount originally prayed for.

### PLEA TO THE JURISDICTION

The defendant excepted to the jurisdiction of the Fourth District Court "for the reasons that defendant has no domicile within this judicial district and no one upon whom service may be made." Defendant urges this exception in its brief as follows:

"The defendant excepts to the jurisdiction of the court for the reason that the defendant is a foreign corporation and not domiciled within the jurisdiction of this court and had no authorized agent in the parish upon whom service was made. Service should have been made upon a designated agent or officer of the company, or upon the Secretary of State; none of which was done."

In the record there is an agreement signed by the attorneys for the plaintiff and the defendant. Paragraph 3 of that agreement reads as follows:

"Defendant admits that defendant's agent for service of legal process upon it in the State of Louisiana resides in Bastrop, Louisiana, and so resided when this suit was filed and service was made."

The sheriff's return on the citation shows personal service on G. A. Peterkin, designated agent for service in the parish of Morehouse. The plea to the jurisdiction was properly overruled.

### EXCEPTION OF NO CAUSE OR RIGHT OF ACTION

This exception was leveled at plaintiff's alternative demand under the provisions of the Civil Code and is based on the theory that if plaintiff has any right of action at all it is under the Employers' Liability Act (Act No. 20 of 1914 as amended). Defendant is not consistent in this pleading, for in its answer it alleges that plaintiff is an independent contractor and, therefore, does not come within the provisions of the Employers' Liability Act. If the evidence should show plaintiff to be an independent contractor it is clear that he could not recover under the Employers' Liability Act. So that, if the evidence should show further that plaintiff received his injury because of the negligence of the defendant through its agents and employees, he would have a right of action under article 2315 of the Civil Code of Louisiana.

### ON THE MERITS

Defendant bases its entire defense on the theory that plaintiff was an independent contractor. Very little effort is made to refute plaintiff's testimony as to the extent of the injury. So that, the most important and first question to be determined is whether plaintiff was working in the capacity of an employee of the defendant or as an independent contractor. In regard to the matter of his employment the plaintiff testified as follows:

"Q. Did you work under their supervision, did they tell you how to work and what to do?

"A. Yes, sir.

"Q. You had no control over their work?

"A. No, sir.

"Q. What kind of work did you do?

"A. I pulled tar pots and hauled skids and hauled tools and everything else they told me to haul.

"Q. You did anything they told you to do, in other words?

"A. Yes, sir.

"Q. Anything in line with work that could be done with a team?

"A. Yes, sir; anything that come up with the teams, pulling wagons or slips or anything else."

* * * * * * *

"Q. What were you being paid for at the time you got hurt, what were you doing at that time?

"A. I was pulling the tar pot.

"Q. How did you get hurt?

"A. By pulling this tar pot with the team going down the embankment on the road and the foreman failed to lock it when he notified me to drive up. There is no brakes on this tar pot and if you don't lock them they will run over the team and over the embankment and there ain't no way to check them."

Mr. G. A. Manuel, a witness for the defendant, testified as follows:

"Q. State the nature of his employment and what sort of work he was doing.

"A. Mr. Armes had some teams that were working for the company in doing general work in the construction of pipe line, and the agreement between Mr. Armes and Mr. Fahey, the Superintendent, was that he would receive Seventy Cents (70c) per hour for his teams and he was to furnish the drivers, the wagons, harness and all equipment that made up the necessary equipment for that line of work, and the payment of the money was to go to Mr. Armes himself, and he was to pay his own drivers."

This testimony is conclusive proof that plaintiff was not an independent contractor. Defendant, Williams Brothers, Inc., was engaged in the construction of a pipe line from the Monroe and Richland gas fields through North Louisiana toward the city of Shreveport. This G. A. Manuel says that plaintiff had some teams for the company doing "general work in the construction of the pipe line." (Boldface type ours.)

Words could not make it plainer that plaintiff was not an independent contractor. Plaintiff was driving one of his teams and was subject to the orders of the defendant through its agents and employees. If tar pots needed pulling plaintiff was ordered to take his team and move them. If skids or tools or anything else needed hauling that was plaintiff's job under the supervision of the defendant through its agents and employees. Among the duties of plaintiff was the moving of the hot tar pots at stated intervals. In doing this he was as much an employee of the company as were the other men who applied the tar to the pipe after plaintiff had set it in place for them from time to time. Counsel for the defendant is very earnest in his contention that plaintiff was an independent contractor and cites numerous authorities in support of his position. He specially urges that the case of Clements v. Luby Oil Co., 170 La. 910, 129 So. 526, 527, is conclusive in the matter. The cases are not parallel. In that case plaintiff's deceased husband and his partner contracted to build a derrick for the defendant for a specific contract price. The court held that the means by which the result was to be accomplished were not under the control of defendant, but that plaintiff's husband and his partner were "wholly free to execute the contract with the material furnished according to their own methods." This holding was based on the statutory definition of an independent contractor as found in paragraph 8 of section 3 of Act No. 85 of 1926, which reads as follows:

"The term 'independent contractor' shall be considered to mean, for the purpose of this act, any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished."

Under the correct interpretation of that definition, in order to class plaintiff as an independent contractor it is necessary to prove that plaintiff rendered service other than manual labor for a specified result, either as a unit or a whole, and that he was under the control of the defendant as to the results of the work only and not as to the means. In the case under consideration plaintiff rendered no service other than manual labor, nor was the service he agreed to render for any specified result, either as a unit or a whole. The service which plaintiff contracted to render and which he did render was general service of whatever kind for which a need might arise. If a pot of hot tar was to be moved the defendant, through its agents and employees, called on plaintiff to do it with his teams. If dirt was to be moved with a slip that was plaintiff's job. If some tools were to be moved, it was plaintiff's job to hitch his team to a wagon or other vehicle and load and move them. Whenever a need arose in the general construction of the pipe line that required hauling with the team plaintiff was called on to render his service. And, furthermore, in the rendering of his service to defendant, plaintiff was under the control of the defendant entirely as to the means by which the result of his service was to be accomplished. So taking the Clements v. Luby Oil Company case (which is the latest and clearest expression of the Supreme Court on the subject) as a guide, it is clear that plaintiff in the case under con-

sideration was not an independent contractor. Defendant had the authority over plaintiff to order him to "go there" and he would go, and to command him "to do this" and he would do it, even though in each case he used his teams in obeying the command. He was not free to render any particular service in any manner, but he rendered all his service under the sole direction and supervision of the defendant, both as to the means and the results. Counsel for defendant says that plaintiff was doing "team contract work." That may be true in a sense, but in this case he was not an independent contractor for the reason that all the work that he was doing with his teams was done under the direct control and supervision of the defendant through its agents and employees.

In addition to the case which we have just discussed, counsel cited a number of other authorities which we shall discuss in order.

Johnson v. Vincennes Bridge Company, 167 La. 111, 118 So. 820. In this case defendant had the contract for the construction of a bridge. A carload of steel that was to be used in the construction of the bridge arrived at the depot. Plaintiff contracted for the job of moving this steel from the car to the bridge site for a specific sum. In this case he rendered service for a specific sum for a specified result and was under the control of the defendant as to the results only of delivering the steel to the proper place and not as to the means of doing so. That cannot be said of plaintiff in the case under consideration. His work was a part of the general construction of the pipe line, for G. A. Manuel, a witness for the defendant, says Armes was working for the company in doing general work in the construction of the pipe line.

Gallagher v. Southwestern Exposition Association, 28 La.. Ann. 943. This .case is not in point. The plaintiff was working for an independent contractor and was injured. He brought suit for damages against the employer of the independent contractor and the court held that he could not recover. The case was decided before the enactment of the Employers' Liability Act, and counsel for defendant in his brief practically admits that the doctrine of this case is no longer correct when he says:

"However, if one of the employees (or plaintiff) had been injured the defendant company would have been responsible under the decisions of the Court of Appeal and the Supreme Court of this state."

There was no question raised as to what constitutes an independent contractor and the case is not, therefore, applicable.

Robichaux v. Morgan's L. & T. R. R. & S. S. Co., 131 La. 727, 60 So. 206. This is a case where the son of plaintiff was killed while rendering service for an independent contractor and his parents brought suit for damages for his death against the employer of the independent contractor. The court very properly held that there could be no recovery. This case also was decided before the enactment of the Employers' Liability Act and is not applicable to the case under consideration in which the issue is raised as to whether the plaintiff is an independent contractor or whether he is an employee within the purview of the Employers' Liability Act. In the cited case there was no controversy as to what constitutes an independent contractor.

Lutenbacher v. Mitchell-Borne Construction Co., 136 La. 805, 67 So. 888, 19 A. L. R. 206. This is another case that did not involve the Employers' Liability Act. It likewise involves merely the effort to recover damages from the owner on account of the death of an employee of an independent contractor. It does not involve the question raised by defendant in the case under consideration.

Clark v. Tall Timber Lumber Co., 140 La. 380, 73 So. 239. In this case the plaintiff contracted with defendant to make and deliver cross ties for a stipulated sum. In the work of making the ties he was injured and sought to recover compensation from the defendant under the Employers' Liability Act. The court held him to be an independent contractor. The decision is fully justified by the definition of an independent contractor quoted in the beginning of this opinion. The defendant had no control whatever over the plaintiff as to the means by which the work was to be performed, whereas in the case under consideration the defendant had complete control over the plaintiff as to the means by which the result of his labor was accomplished.

Muldry v. Fromherz & Drennan, 142 La. 1087, 78 So. 126. This is a case in which an injured third party undertakes to recover damages from the owner of a building when the injury was inflicted by an independent contractor. There was no controversy as to what constitutes an independent contractor. The only question decided in the case was that the employer or owner is not responsible for the injury inflicted on third persons through the fault or negligence of the independent contractor. In this case the independent contractor was employed to do a definite piece of work for a specified sum, while he was to have complete control over his movements and the means selected and used by him in accomplishing the result or object of the contract. No such situation existed in the case at bar.

Ryland v. Wheeler Lumber Co., 146 La. 787, 84 So. 55, 57. In this case the court stated the facts as follows:

"Defendant owned timbered lands on and near Black river, in what is known as Black river swamp, 22 miles from Jonesville, and was having the timber felled and cut into sawlogs, which plaintiff had contracted to haul to the river bank at· the rate of $3 per 1,000 feet; he to furnish his own teams, employ, control, and discharge the working men required, and to be his own master in the matter of handling his outfit and the methods to be adopted in the execution of the contract."

Plaintiff sought to recover damages from defendant on account of an injury received by him in the course of his performance of this contract. The court very correctly held that he could not recover for the reason that he was an independent contractor and not an employee. Under the terms of his contract he had complete control over all his movements as well as the means to be used by him in accomplishing the result of the service to be rendered by him. Such cannot be said of the plaintiff in the suit under consideration.

Helton v. Tall Timber Lumber Co., 148 La. 180, 86 So. 729, 730. In this case the deceased husband of the plaintiff was doing special work for the defendant at a stipulated rate of pay. He was his own boss entirely, worked when and as long as he pleased, and went and came at will, without any control being exercised over him or his movements by the defendant. In discussing the capacity in which he was working, the court said:

"A workman who in the manner of doing his work is under nobody's direction or control but his own cannot be classed as an employee, but is an independent contractor."

Plaintiff in the present case cannot be compared with the deceased in the case cited.

Rome v. Mexican Petroleum Corp., 3 La. App. 523. This case is cited by counsel for defendant on account of the following paragraph of the syllabus:

"Liberal interpretation of the law is the rule of reason governing courts in compensation cases, and no definite inflexible rule can be established. Each case must be considered in the light of its own facts and attending circumstances."

The question of an independent contractor did not arise in the case in any form. On account of a liberal interpretation of the law the plaintiff recovered. In the present case even a strict interpretation of the law classifies plaintiff as an employee rather than as an independent contractor.

Brown v. Weber King Lumber Co., 3 La. App. 596. In this case it is held that when one contracts to cut and haul cross ties at a specified rate with no foreman or superintendent to control him as to his time or manner of work, he is an independent contractor. The conditions that prevail in the case under consideration are not parallel with those in the case cited.

Harris v. Dobson Bros., 6 La. App. 223. In deciding whether the plaintiff was an employee or an independent contractor the court said:

"Plaintiff alleged that he was employed by both Dobson Brothers and the 'company.' Both of them denied this. The burden was on him, therefore, to prove the fact. We do not think he has discharged this burden. His testimony as to the conditions under which he worked convinces us that he was not the employee of either defendant but an independent contractor. He was a professional loader of ties by occupation. He labored for others who had ties to be loaded as well as for defendants. He worked on such days and during such

hours as he pleased. He was not under obligation to load any given number of ties in any fixed space of time. Neither of the defendants had any control over the manner in which or the time when he should do his work. He was not paid for his services by the hour, day or week, but so many · cents for each tie he loaded; and this whether the number he loaded amounted to a carload or not; three cents each for pine and gum ties and four cents each for white oak and red oak ties. When he saw ties stacked along the railroad right-of-way ready for shipment, if he was at leisure he would request Dobson Brothers to have a car 'spotted' for him to load them in. He says 'they (meaning Dobson Brothers) knew "I could load ties and had been following it for some time," and they would say, the ties are there and the company (meaning the International Creosoting & Construction Company) would pay for them'; and thereupon he proceeded to load the ties into the car in his own way and taking his own time. This does not show a relationship of employer and employee between him and the defendants or either of them. On the contrary, it shows him to have been an independent contractor; on a small scale, it is true, but nonetheless an independent contractor."

In the present case the plaintiff cannot be said to have been working in the way in which the plaintiff in the cited case was. Therefore, that case cannot be used as authority for classifying this plaintiff as 'an independent contractor.

## QUANTUM OF DAMAGE

As we have already said, the fact of the injury is admitted. It remains to ascertain its extent. The testimony in the case was taken out of court by counsel in the city of Shreveport on November 18, 1930. The plaintiff testified that he was totally disabled until about May 13, 1930, and that from then on he could do only a small amount of work. At the time of the taking of the testimony his hand was still in bad condition, though it appears that the injury was then confined to his hand.

Doctors C. H. Potts and O. C. Rigby examined the plaintiff on the day of the taking of the testimony and it is their testimony that his hand will always be more or less disabled. Dr. Potts' testimony in part is as follows:

"A. I examined Mr. Armes this morning at my office and I find that he has a first and second degree burn on the top portion of the right hand and lower one-third of his arm from about three inches below the wrist joint down over the back of his hand and including three fingers, middle finger, ring finger and little finger. These scars, the modified scar or scar tissue is denser at the area about two inches above his wrist where it appears to have caught up some of the tendons, but is fairly loose and pliable over the rest of his hand. I also found that he has several small ulcers, one especially on his joint at the middle finger over to the side, which are superficial and in fact they do not extend below the scar area.
"Q. Did you test out the strength of the hand?
"A. The strength of his hand as far as grip is concerned is not normal compared to the other hand.
"Q. About what percentage would you figure that to be?
"A. I would say that the grip is less than twenty-five per cent of what it should be."

Dr. Rigby agrees with Dr. Potts in practically all his conclusions.

Mr. J. A. Ferguson, a neighbor of the plaintiff, testified that plaintiff carried his arm in a sling and that "it was way up in the spring" before he could do any work on his farm.

Doctors E. L. Sanderson and J. E. Slicer testified for the defendant. They examined the plaintiff on July 15, 1930, several

months before the other two doctors did on the day the testimony was taken. They found evidences of a burn, and it was their opinion that the hand had recovered and that there was no disability at the time of their examination. They did not examine him on the day that the testimony was taken, and as Doctors Potts and Rigby found on that day disability of at least one-half, it is evident that the plaintiff did not make the progress that Doctors Sanderson and Slicer thought he would make on July 15. Since the testimony of the physicians placed on the stand by the plaintiff is based on an examination made at a much later date than that made by the other doctors, we are bound to give their testimony more weight and consideration.

It is certain that plaintiff is suffering from a permanent disability in his hand and is entitled to compensation from the date of the injury for a period of one hundred fifty weeks. Taking the testimony as a whole, we find that the disability is at least 60 per cent. Plaintiff was working seven days in the week, and allowing him the same wages that he paid his other drivers, it is but fair to say that he was earning wages at the rate of $3.50 per day, and that his weekly wages were therefore $24.50.

For the reasons assigned it is hereby ordered, adjudged, and decreed that the judgment appealed from be and it is hereby amended so as to allow the plaintiff compensation at the rate of 60 per cent. of 65 per cent of $24.50, or $9.55 per week from September 2, 1929, for a period of one hundred fifty weeks, each weekly payment to bear legal interest from the date of its maturity, and as thus amended the judgment is affirmed, the defendant to pay the costs of both courts.