WREN *v.* D. F. JONES CONSTRUCTION COMPANY.

4-7884                                            194 S. W. 2d 896

Opinion delivered April 29, 1946.

Rehearing denied June 24, 1946.

*Ward Martin,* for appellant.

*Buzbee, Harrison & Wright,* for appellee.

McFADDIN, J.   This appeal involves a claim filed under the Workmen's Compensation Law, which is Act No. 319 of 1939. The appellant is the widow of Doss Wren, and she seeks to recover compensation from appellee for the death of her husband. There are two questions presented on this appeal; and the facts will appear as we discuss these questions.

I.   *Did Appellee, by its Failure to Promptly File Notice of Intention to Controvert the Claim, Thereby Lose its right to Make the Defense of Independent Contractor?* Doss Wren was engaged in hauling gravel for appellee, and was instantly killed while driving a truck

in Columbia county, Arkansas, on July 16, 1942. On July 21st, D. F. Jones Construction Co. filed the first report with the Workmen's Compensation Commission. Shortly thereafter the Commission received notice from an attorney (not now in the case), advising the Commission of the claim of the appellant. Then ensued a series of unexplained delays. The Commission set the hearing for October 15th, but instead of a hearing, Mrs. Wren advised the Commission, by letter of that date, that her present attorney was the only one authorized to represent her. The hearing was·reset for November 13th; and then reset for December 3rd; and there was a still further delay. Finally, on March 12, 1943, notice of hearing was given for March 25, 1943; and on that notice the subject of the hearing was listed as "Dependency."

At the beginning of the hearing before the referee on the date last mentioned, appellant filed "Motion for Allowance of Compensation," which recited that Doss Wren was killed on July 16, 1942, and that notice of claim was given on July 21st in accordance with § 17 of the Workmen's Compensation Law; and "More than fourteen days have elapsed since the filing of such notice, and, under the provisions of such act (§ 19-d), respondents are precluded from controverting claimant's right. to compensation. Respondents also failed to file form 9-A as required by the Commission." On the argument of this motion, appellee's attorney informed the referee, and it is in the record:

"The respondents state that on November 2, 1942, a letter was written to· the Commission with a copy to Mr. Ward Martin, receipt of which he has acknowledged to me on many occasions, in which he was apprised of the nature of the defense. Since that time I, as attorney for the respondents, have talked with Mr. Martin not less than half a dozen times. He is fully acquainted with the defense of independent contractor. . . . At his request, on January 26, 1943, I met with him before the members of the Commission at Little Rock, at which time Your Honor was present, and the identical point now urged was raised. At his request a letter was written by the chairman of the Commission covering the point and

denying the point he is now raising. On January 24, 1943, a letter was written to Mr. Martin by the chairman, copy of which was sent me. I want this letter and all the other correspondence in the file to be made a part of the record in order to show that the point has been raised. . . ."

The referee then ruled:

"By the Referee: Those papers will be made a part of the record. And, although I am under the impression this point that is now being raised by the claimant has already been determined by the Commission in this case, I am going to again overrule the objection under provisions of § 19-d of the Act, which to my mind, is plain, that if the employer controverts the right to compensation he shall file certain notices, but the failure to file this notice will not prevent the employer raising any defense when the case or claim is subsequently filed by the employee, nor shall the filing of such notice preclude the employer from raising any additional defense."

From these excerpts from the record, it is thus clear that the appellee had all along controverted the claim, and appellant's counsel had been so informed. Even if the first notice to controvert was for some other ground than the defense of independent contractor, nevertheless, that point could be raised as late as the hearing. This is true because of § 19-d of the Act which concludes with these words: "nor shall the filing of the notice preclude the employer raising any additional defense." We, therefore, hold that, under the facts in this case, the defense of independent contractor could be raised as late as the hearing of March 25, 1943.

II. *Was Doss Wren an Independent Contractor at the Time and Place he was Killed?* Wren owned his own truck and was engaged in hauling gravel for appellee at $3 per load. Appellee loaded the truck at the gravel pit, and Wren hauled the gravel some 14 miles, and dumped the gravel at the place indicated by appellee. It was while Wren was driving his loaded truck on the public highway that another vehicle collided with his truck, and inflicted mortal injuries to Wren. As before stated, Wren was

compensated for the loads hauled. He was free to make as many or as few trips per day as he desired. The appellee made no deductions from Wren's pay for Social Security or Unemployment Compensation. Wren could buy gasoline wherever he desired; or for convenience, he could buy it at a designated station and sign a ticket which would later be charged against his pay.

The Commission held that Wren was an independent contractor and not an employee; and therefore denied recovery to the appellant. The Commission used this language:

"The decedent owned his own truck and worked to suit his own convenience. The employer merely loaded the truck and showed the decedent where to unload. The evidence shows that the conduct of the decedent and his manner and means of working were not subject to the control of the respondent employer. Held, therefore, that the decedent was not an employee of the respondent employer within the meaning of the Workmen's Compensation Law."

If Wren was an employee of the appellee, then Wren was protected by the Workmen's Compensation Law, and the appellant should recover. If Wren was an independent contractor, then he was not protected by the Workmen's Compensation Law, and appellant cannot recover. The definition of "employee" in § 2 of the Workmen's Compensation Law is authority for these statements. See *Irvan v. Bounds,* 205 Ark. 752, 170 S. W. 2d 674.

Whether Wren was an employee or an independent contractor is thus the decisive question; and it is a question of fact. In *Chapman & Dewey Lumber Co.* v. *Andrews,* 192 Ark. 291, 91 S. W. 2d 1026, it was insisted that the trial court should have decided *as a matter of law* whether the worker was an employee or an independent contractor; and, in denying that contention, this court said:

"We cannot agree with appellant that the court erred in refusing its request for a directed verdict in its favor. On the contrary, we are of the opinion that the

question was one for the jury. We have many times held that 'an independent contractor is one who, in the course of an independent occupation, prosecutes and directs the work himself, using his own methods to accomplish it, and represents the will of the employer only as to the result of his work.' Headnote, *Ellis & Lewis* v. *Warner,* 180 Ark. 53, 20 S. W. 2d 320. Also that such status is usually a question of fact for the jury. It is the duty of the court to define the relationship, and for the jury to determine its existence. *Ellis & Lewis* v. *Warner, supra.* In this case, the facts are sufficient to take the question to the jury."

In *Hobbs-Western Co.* v. *Carmical,* 192 Ark. 59, 91 S. W. 2d 605, in discussing the duty of the jury to decide whether the worker was an employee or an independent contractor, this court said:

"A reasonable inference to be drawn from the evidence is that Westmoreland intended to, and did, retain the right to give directions in regard to the details of the work. In the case of *Ice Service Co.* v. *Forbess,* 180 Ark. 253, 21 S. W. 2d 411, we said: 'The conclusion as to the relationship must be drawn from all the circumstances in proof, and where there is any substantial evidence tending to show that the right of control over the manner of doing the work was reserved, it became a question for the jury whether or not the relation was that of master and servant.' The circumstances proven in the case at bar raise a question as to the relationship of the truck driver to the Hobbs-Western Company to be determined by the rules announced in the cases cited, *supra,* which question the trial court properly submitted to the jury."

We have, also, held that when facts are made to appear, from which inferences are to be drawn and conclusions reached, then it is for the jury to draw the inferences and reach the conclusions. In *Grand Lodge* v. *Banister,* 80 Ark. 190, 96 S. W. 742, Mr. Justice McCulloch said: "If the facts are such that men of reasonable intelligence may honestly draw therefrom different conclusions on the question in dispute, then they are properly submitted to the jury for determination. Judges should

not, under that state of the case, substitute their judgment for that of the jury." In *St. Louis, I. M. & S. Ry. Co.* v. *Coleman,* 97 Ark. 438, 135 S. W. 338, Ch. J. McCulloch said: "When the testimony, though unconflicting, is such that different minds may reasonably draw different conclusions therefrom, then it is the duty of the trial court to submit the issues to the jury for determination, and on appeal the verdict of the jury should not be disturbed. In *St. Louis, I. M. & S. Ry. Co.* v. *Fuqua,* 114 Ark. 112, 169 S. W. 786, Mr. Justice Hart said: "The rule is that where fair-minded men might honestly differ as to the conclusion to be drawn from the facts, whether controverted or uncontroverted, the question at issue should go to the jury.' See, also, *Mississippi River Fuel Corporation* v. *Senn,* 184 Ark. 554, 43 S. W. 2d 255, and many other cases collected in 16 West's Ark. Dig., 'Trials,' § 142; and see, also, 64 C. J. 346."

Under our Workmen's Compensation Law the Commission acts as a trier of the facts—*i.e.,* a jury—in drawing the inferences and reaching the conclusions from the facts. We have repeatedly held that the finding of the Commission is entitled to the same force and effect as a jury verdict. In *Ozan Lumber Co.* v. *Garner,* 208 Ark. 645, 187 S. W. 2d 181, in affirming the finding of the Commission to the effect that the worker was an independent contractor and not an employee, we said:

"We are not concerned here with the preponderance of the testimony. After a careful review of the entire record, we have reached the conclusion that there is substantial evidence presented to support the Commission's finding that appellee, at the time of his injury, was an independent contractor."

In *Parker Stave Co.* v. *Hines,* 209 Ark. 438, 190 S. W. 2d 620, in affirming the Commission's finding that the worker was an employee and not an independent contractor, we said:

"In determining whether one is an employee or an independent contractor, the Compensation Act is to be given a liberal construction in favor of the workman,

and any doubt is to be resolved in favor of his status as an employee rather than an independent contractor. *Irvan* v. *Bounds,* 205 Ark. 752, 170 S. W. 2d 674; 71 C. J., page 449.

"No hard and fast rule can be formulated to determine whether a workman is an employee or an independent contractor, and each case must be determined upon its own peculiar facts."

There is no conflict of law between the last two quoted cases, because both cases held that the Commission determines the facts; and we give the Commission's findings the force and effect of a jury verdict. In the case at bar, if the Commission had reached the conclusion that Doss Wren was an employee at the time and place he was killed, then we would have affirmed the Commission on that finding, because it was a question of fact; and there was evidence from which the Commission could have found either way. The Commission could have likened the facts in the present case to those in any of these cases, to-wit: *Ellis & Lewis* v. *Warner,* 180 Ark. 53, 20 S. W. 2d 320, and 182 Ark. 613, 32 S. W. 2d 167; *Delamar and Allison* v. *Ward,* 184 Ark. 82, 41 S. W. 2d 760; *Parker Stave Co.* v. *Hines, supra; Hobbs-Western* v. *Carmical, supra; Chapman & Dewey Lumber Co.* v. *Andrews, supra; Irvan* v. *Bounds, supra.* Or the Commission could have found (and did find) that the facts in the case at bar were more like the facts in *Ozan Lumber Co.* v. *Garner, supra,* and *Crossett Lumber Co.* v. *McCain,* 205 Ark. 631, 170 S. W. 2d 64. It was for the Commission to determine the facts; there is substantial evidence in the record to support the conclusion reached.

Therefore, we affirm the judgment of the circuit court, which affirmed the order of the Commission.

ROBINS, J., dissenting. I respectfully dissent.

In my opinion the evidence adduced showed that Wren was an employee of appellee, D. F. Jones Construction Company, and not an independent contractor.

The testimony, in which there was not the slightest conflict, established that:

(1)    Wren was not hired to do any particular piece of work or to haul any specified amount of gravel. "Arrangement for definite quantity of work is held characteristic of independent contractorship, and lack of such definiteness tends to show that the worker is an employee, at least where payment is by the unit of work." 71 C. J. 470. *Warner* v. *Fullerton-Powell Hardwood Lumber Co.,* 231 Mich. 238, 204 N. W. 107; *Helmuth* v. *Industrial Accident Commission,* 59 Cal. App. 160, 210 P. 428.

(2)    Under his employment agreement he could have quit work at any time and his employer could have discharged him at any time with or without cause. "The power of an employer to terminate the employment at any time is incompatible with the full control of the work that is usually enjoyed by an independent contractor." *Bowen* v. *Gradison Construction Co.,* 236 Ky. 270, 32 S. W. 2d 1014. "The power to discharge has been regarded as the test by which to determine whether the relation of master and servant exists. 1 Thompson on Negligence, § 579." *Messmer* v. *Bell & Coggeshall Co.,* 133 Ky. 19, 117 S. W. 346, 19 Ann. Cas. 1. "By virtue of its power to discharge, the company could, at any moment, direct the minutest detail and method of work. The fact, if a fact, that it did not do so is immaterial. It is the power of control, not the fact of control, that is the principal factor in distinguishing a servant from a contractor. *Franklin Coal & Coke Co.* v. *Industrial Commission,* 296 Ill. 329, 129 N. E. 811." *Industrial Commission of Colorado* v. *Bonfils,* 78 Colo. 306, 241 P. 735. To the same effect are holdings in *Frost* v. *Blue Ridge Timber Corporation,* 158 Tenn. 18, 11 S. W. 2d 860; In re *James Murray,* 130 Me. 181, 154 Atl. 352, 75 A. L. R. 720; *Kelley's Dependents* v. *Hoosac Lumber Co.,* 95 Vt. 50, 113 Atl. 818; *Barclay* v. *Pudget Sound Lumber Co.,* 48 Wash. 241, 93 Pac. 430, 16 L. R. A., N. S., 140; *Nyback* v. *Champagne Lumber Co.,* 48 C. C. A. 632, 109 Fed. 732; *Evans* v. *Dare Lumber Co.,* 174 N. C. 31, 93 S. E. 430, 30 A. L. R. 1498.

(3)    The employer controlled the methods of the work done by Wren. This is true because:

(a) The employer actually loaded Wren's truck at the gravel pit.

(b) The employer located the exact spot on the highway where Wren should unload the gravel.

(c) The employer furnished gasoline for Wren in the operation of the truck which hauled the gravel. While it is true that the employer collected the retail cost of this gasoline out of Wren's pay, yet it may well be inferred that the employer would not furnish gasoline indiscriminately to haulers without knowing that the fuel was being used solely in hauling gravel for the employer; and this would indicate a measure of supervision by the employer, not only of the loading and unloading, but of the actual operation of Wren's truck.

So we have here a case where a man was hired, not to carry out any certain project or any definite part thereof, and where he was, at all times, under the control and supervision of the employer, as to the methods of work—with the employer possessing further absolute control that necessarily inheres in the right of the employer to discharge him at any time.

The great weight of authority, as I find it, is to the effect that one working under the agreement and in the situation shown here as to Wren is an employee and not an independent contractor.

The cases cited below, all of which arose under Workmen's Compensation Acts identical with or similar to the Arkansas law, illustrate the trend of judicial decisions on this question.

A "rock contractor" was engaged under written contract to remove rock and other material (except coal) necessary to be removed in coal mining operations. He was to furnish all labor, material, tools and equipment necessary and was to be paid per cubic yard of excavation. The mine owner had the right to cancel the contract whenever the work was not satisfactory. It was held that this "rock contractor" was an employee, not an independent contractor. *Kelley* v. *Delaware L. & W. R. Co.*, 270 Pa. 426, 113 Atl. 419.

In the case of *Carr* v. *Krekeler,* 94 Ind. App. 508, 181 N. E. 526, the question was whether Krekeler, whose widow had filed claim for compensation, was the employee of Carr or an independent contractor. The evidence, as stated by the court, was to this effect: "The deceased was to be paid $1 per yard, and he was to furnish the truck, the driver, and to service the truck completely. There was no agreement that the deceased was to haul any certain or definite amount or quantity of stone; nor that he was to haul for any certain or definite length of time. His truck was one of several so employed by the appellants. It appears that he could quit at any time; could haul as many loads per day as he desired, and could be discharged, . . . at any time." The appellate court of Indiana held that Krekeler was an employee, not an independent contractor.

In the case of *Armes* v. *Williams Bros., Inc.,* 17 La. App. 555, 136 So. 160, it was held that a farmer who furnished three teams and drivers (of which he was one) to assist in construction of pipe line was an employee and not an independent contractor.

The supreme court of Michigan, in the case of *Tuttle* v. *Embury-Martin Lumber Co.,* 192 Mich. 385, 158 N. W. 875, Ann. Cas. 1918C, 664, held that Tuttle, who was employed to use his team in hauling logs at $2 per thousand, was an employee and not an independent contractor.

In the case of *Van Simaeys* v. *Geo. R. Cook Co.,* 210 Mich. 540, 167 N. W. 925, it appeared that Van Simaeys was employed by the Cook Company to haul a quantity of dirt to make a fill. He was to furnish wagon and team and was to receive 65 cents to 75 cents for each load hauled by him. He was held to be a workman, not an independent contractor.

Scheel owned his truck and kept up the repairs thereon. He hauled regularly for the Three Rivers Glass Company, but was allowed to carry freight for other people in his truck. Under these facts Scheel was held to be an employee and not an independent contractor.

*Southern Surety Company of New York* v. *Scheel* (Tex. Civ. App.), 49 S. W. 2d 937.

In the case of *Powell* v. *Spencer Bros.*, 5 La. App. 218, it was shown that Powell was employed by Spencer Bros., who had a contract to gravel certain highways, to haul gravel. Powell furnished the truck and was paid at a certain rate per yard. In that case the court said: "We are of the opinion, however, that the plaintiff, having been employed to haul the gravel with a motor truck, and the defendants having instructed him as to the places of loading and unloading, shows that defendants did have control of the means and manner by which the work was to be accomplished, and that they did have control of the plaintiff during the time he was working and the right to discharge him; hence that plaintiff was an employee rather than an independent contractor and the mere fact that he furnished and maintained the truck does not alter the situation."

Facts presented in the case of *Alexander* v. *Latimer*, 5 La. App. 41, were practically identical with those in the case at bar. The court held in that case that the hauler was a laborer, saying: "Defendant under his contract with the parish necessarily retained control of the plaintiff as to the delivery of the gravel, . . . and we do not think it would have been possible for him to have had greater control had the plaintiff been employed by the day."

In the case of *Beebe* v. *McKeithen Construction Co.*, 5 La. App. 179, the court thus stated the facts: "Plaintiff was employed by defendant to haul gravel for the construction of a public road. He owned and used his own truck. He was paid by the cubic yard for hauling the gravel. . . . He was not employed to haul any specific gravel nor was any quantity stipulated . . ." It was there held that plaintiff was a laborer and not an independent contractor.

In the case of *James* v. *Hillyer-Deutsch-Edwards*, 15 La. App. 71, 130 So. 257, it was held that one who was engaged to furnish, service and operate his truck, load

ties in the woods and haul them to the railroad right-of-way for 15 cents per tie was an employee and not an independent contractor.

The claimant in the case of *Bucher* v. *American Fruit Growers' Company*, 107 Pa. Super. Ct. 399, 163 A. 33, who furnished and drove his own truck in hauling apples from the producer's farm to the railroad station for shipment, was held to be an employee within the meaning of the Workmen's Compensation Act.

In the case of *Anderson* v. *Coca-Cola Bottling Co.*, 190 Minn. 125, 251 N. W. 3, involving a claim under the Workmen's Compensation Law of Minnesota, the supreme court of that state said: "Anderson was the owner of a Chevrolet truck, his sole business equipment. On June 29, 1931, he was engaged by relator the Coca-Cola Bottling Company to haul and deliver its bottled products by use of the truck at a compensation fixed at $1.25 per hour. The Coca-Cola beverage was transported in wooden cases each holding 24 bottles. The suggestion of relators that Anderson was an independent contractor and not an employee is not tenable. . . . His status could not be dignified to that of independent contractor."

The supreme judicial court of Maine, in *Mitchell's Case*, 130 Me. 516, 154 Atl. 184, held that Mitchell, killed accidentally while hauling gravel, was an employee and not an independent contractor, and sustained an award of compensation to his widow. The evidence showed that a contracting firm had employed Mitchell to haul gravel from a pit to a highway construction job. Mitchell had been engaged in the trucking business for several years, and under the agreement with the contractor he was to furnish his truck and to be paid on an hourly basis.

In the case of *Root* v. *Shadbolt & Middleton*, 195 Ia. 1225, 193 N. W. 634, it appeared that Root, who was killed by a cave-in at a gravel pit, had been employed to haul gravel from the pit to a highway job. Root furnished his own team, which he drove. He was not employed by the contractors, but by another farmer in his neighborhood who had been employed to take charge of the haul-

ing operation. His widow's claim for compensation was resisted on the ground that he was an independent contractor. The supreme court of Iowa held that he was an employee and not an independent contractor.

It appeared in the case of *Bristol & Gale Company* v. *Industrial Commission*, 292 Ill. 16, 126 N. E. 599, involving a claim asserted by the administratrix of the estate of George Johnson for an award under the Workmen's Compensation Act for the death of Johnson, that Johnson had contracted to haul for Bristol & Gale Company. He furnished his own wagon and team and a driver when he did not drive himself. He fed and cared for his horses. For his work and that of his driver and for use of his wagon and team he was paid a stipulated sum. The claim was resisted on the ground that Johnson was an independent contractor. But the supreme court of Illinois held that he was an employee and sustained the award.

In the case of *Standish* v. *Larsen-Merryweather Co.*, 124 Nebr. 197, 245 N. W. 606, it was shown that Standish was employed by a contracting company to haul gravel used by it in surfacing a public highway—the gravel to be hauled from a pit to designated places on the highway. Standish was to furnish and service his own truck and to be paid 70 cents for each load hauled. His claim for compensation was resisted on the ground that he was an independent contractor. It was held by the Nebraska Supreme Court that he was an employee, not an independent contractor.

The testimony in the case of *Western Indemnity Co.* v. *Prater* (Tex. Civ. App.), 213 S. W. 355, showed that Prater was employed by Athens Pottery Company to haul clay, Prater furnishing wagon and team and driver and receiving 36 cents per ton. It was held Prater was an employee and not an independent contractor.

The supreme court of Minnesota, in the case of *Rouse* v. *Town of Bird Island*, 169 Minn. 367, 211 N. W. 327, reversing an order of the State Industrial Commission, awarded compensation to the widow and children of

H. J. Rouse, a gravel hauler employed by the town of Bird Island. The sole defense to the claim was that Rouse was an independent contractor. The evidence showed that Rouse was employed to furnish his wagon and team and haul gravel at certain rates per wagon load. The court in that case said: "The fact that the men provided their own team, wagon and shovel is of no significance."

The majority of the court in their opinion say that if the commission had held that Wren was an employee and had made an award to his widow and orphan children the majority would have affirmed such a ruling. This means that in the opinion of the majority of this court the evidence adduced authorized a finding that Wren was not an independent contractor—and yet his widow and little children are denied compensation by us solely because the commission said Wren was an independent contractor.

The letter, as well as the spirit of the Workmen's Compensation Law, requires, whenever there is a doubt as to the propriety of a claim, that such doubt be resolved in favor of the workman or his dependent family.

"There should be accorded to the Workmen's Compensation Act a broad and liberal construction and doubtful cases should be resolved in favor of compensation." (Headnote 4) *Elm Springs Canning Co.* v. *Sullins,* 207 Ark. 257, 180 S. W. 2d 113. To the same effect, see, also, *Hunter* v. *Summerville,* 205 Ark. 463, 169 S. W. 2d 579; *Williams Manufacturing Co.* v. *Walker,* 206 Ark. 392, 175 S. W. 2d 380; *Mack Coal Co.* v. *Hill,* 204 Ark. 407, 162 S. W. 2d 906; *Bales* v. *Service Club No. 1, Camp Chaffee,* 208 Ark. 692, 187 S. W. 2d 321; *Sallee Bros.* v. *Thompson,* 208 Ark. 727, 187 S. W. 2d 956; *Harding Glass Co.* v. *Albertson,* 208 Ark. 866, 187 S. W. 2d 961.

"In determining whether a workman is an employee or an independent contractor, the act is to be given a liberal construction in his favor, and any doubt is to be resolved in favor of his status as an employee, rather than as an independent contractor." 71 C. J. 449; *Domer* v. *Castator,* 82 Ind. App. 574, 146 N. E. 881.

As I view it, we are observing neither the letter nor the spirit of the rule in this case, because we are denying this widow and her children recovery in face of a finding by the majority in effect that the evidence would have justified such a recovery.

The purpose of this law was to distribute to some extent among all the citizens the tragic consequences of accidents that inevitably must come to many of those who do the hard and dangerous, but essentially necessary, work of the world. As the late Justice CARTER said in the case of *Birchett* v. *Tuf-Nut Garment Manufacturing Company*, 205 Ark. 483, 169 S. W. 2d 574, "the theory behind the Workmen's Compensation Act is this: Every industry exposes those engaged in it to certain risks of being hurt, such risks arising out of the mere fact of being engaged in that industry. The policy behind the Act is the decision of the people that it is fairer to charge as an expense of the industry (to be paid by the ultimate consumer just as he pays for the raw materials used by the industry) a part of the losses arising from the risks, to which those engaged in that industry are exposed by reason of being so engaged, than it is to let such losses fall entirely upon the employee who gets hurt."

When the admitted facts in the case at bar are weighed in the light of the established rules prescribing the status of an independent contractor and that of employee, it seems to me that there can be no doubt that Wren was an employee. But, if there is a doubt about the matter—and the majority in effect hold that there is such a doubt, because they say the question might have been decided either way—that doubt, under our own declarations, ought to be settled in favor of the claimants.

This court has not hesitated, even where a jury has found that one party was the servant of another, to declare that the undisputed evidence showed that the relationship of independent contractor, and not that of servant, existed. A recent example of this is the case of *Rice* v. *Sheppard*, 205 Ark. 193, 168 S. W. 2d 198, where we reversed a judgment in favor of Sheppard, based

on a jury's verdict for injuries caused by Smith, who was hauling certain lumber for Rice. The jury found in that case that Smith was Rice's servant, but we said that the undisputed testimony showed that Smith was an independent contractor. Another such case is that of *Moore and Chicago Mill & Lumber Company* v. *Phillips,* 197 Ark. 131, 120 S. W. 2d 722. Since we had the power and duty in those cases to upset a jury's finding that the relationship of master and servant existed, I submit that we have the same power and duty to overrule the erroneous legal inference drawn by the Workmen's Compensation Commission from the undisputed evidence in the case at bar.

I am authorized to say that Mr. Justice MILLWEE joins in this dissent.